GtAston, Judge.
 

 It has been insisted for the defendants that the Judge erred in that part of his instructions to the jury, wherein he declared that the commissioners had authority to call out the hands, and. cawunand. the personal labor of the inhabitants residing within the corporate limits of the town, for the purpose of repairing the streets. This Court has examined the various acts referred to in the case, and more particularly the act of 1786 entitled “an act for the better regulation of the town of Halifax, and extending the liberties thereof” and is of. opinion that there is no error in this part of the judge’s charge. The fifth section of this act empowers the Commissioners “to make
 
 such
 
 rules,
 
 orders, regulations and ordinances, as to them shall seem meet for repairing the
 
 streets,” with a proviso that such rules and regulations shall not be inconsistent with the constitution and laws of the land. It was impossible by any words which the Legislature could select, to delegate a more ample authority over the subject, and we must give to these words their obvious and general meaning unless we can find clear evidence that they were used in a more restricted sense. The keeping of the highways of the country in a proper state of reparation, by the compulsory service of the inhabitants of the district within which they are situate, had been part of the law of North Carolina for a vast number of years, and probably
 
 from its
 
 earliest settlement. In the years 1784, 1-785 and 1786, immediately before and at the time of passing this act, the attention of the Legislature had been much engaged in revising the laws with respect to the laying out and reparation of roads, and in this revisal they expressly make enactments for commanding these personal services, and re-
 
 *348
 
 ly almost exclusively upon them, for tins important object of police. When therefore in providing for the proper government of the town of Halifax, they clothe the Commissioners with authority to make such ordinances as . . . thcy might deem meet for repairing the streets, there is not the least reason to suppose thát they did not contemplate the probability of the Commissioners adopting apian with respect to the reparation of high-ways within, their jurisdiction, analogous to that which prevailed universally without it. We see nothing in any other part of this section, or in any other section of the act which induces us to believe this construction inaccurate. In a subsequent part of this section they have also authority to make ordinances for appointing a town constable or constables, town watches or pairóles, and “ to make proper allowances by fees or otherwise, for such services,” but this furnishes no indication as to the mode in. which the power of compelling reparation shall be exercised. The eighth section of this act directs the Commissioners to lay an annual tax not exceeding eight shillings on every hundred pounds of taxable property within the to wn, and a proportionable poll tax on those who do not possess one hundred pounds of town property, and declares that the monies therefrom arising shall be applied and laid out in clearing,cleaning,and repairing the streets and public passages, ¡laying the officers.of the town, and in such other public work and business as the Commissioners shall direct.” It is argued that this section, taken in connection with the fifth, shews that it was the purpose of the legislature to give the Commissioners a power to raise a revenue adequate for the exigencies of the town, and that the power to make rules and ordinances was intended to embrace such rules and ordinances only as related to the application of the pecuniary resources of the town to the purposes expressed in the act. Wc see very distinctly apower given to make such ordinances as they may deem meet to accomplish certain purposes, and also a power to raise a revenue to a limited extent to be applied for the same purposes, but so far from discovering that the latter was intended to modify and control."
 
 *349
 
 tlio former power, it appears to us, have been conferred as additional and auxiliary to it. Whether the power of taxation could be regarded as passing by a grant of authority to-make ordinances meet and proper for accom-
 
 * .
 
 plishing certain purposes, might have been doubted. It had been a much mooted question
 
 whether the right to
 
 tax was incident to that of making la\ys. During the revolutionary struggle it was zealously contended by the elder Pitt and his distinguished political associates, that ■the British Parliament possessed the power of legislation ^over the colonies, but could not rightfully levy a penny oftax. At all events it is exceedingly probable that the power of taxation was not intended to be passed thereby, and was regarded as one of sufficient importance to be the subject of distinct grant, and of special limitation. Be this as it may, if it were not embraced within the fifth section it was .thought necessary to bestow it, and if embraced, it was deemed expedient to
 
 restrain the
 
 extent of the grant by the limitations in the eighth.
 

 It will bo seen that the Court does not concur with the Judge in the remaining part of the instructions which were given to the jury, and it wouid proceed to direct a new trial, but that it believes the indictment to be so radically defectivo as not to admit of a judgment being rendered against the defendants, if the,instructions and verdict had been perfectly correct. '
 

 The count of this indictment on which the defendants are convicted is defective in not setting forth how the obligation to repair the streets has been thrown upon the defendants. Of common right it is the duty of the inhabitants of a parish to keep the highways through that parish in reparation, and it may very well be, as has been argued by the Attorney General, that the obligation
 
 to
 
 repair the streets of Halifax,' unless some special provision lias been made for the purpose, has devolved by the incorporation of the town upon the inhabitants therc-~of, and that we. are bound judicially to know that Halifax is one of the incorporated towns of the State, to which the Constitution has given the right of electing a member of the State Legislature. But this is not an indict-
 
 *350
 
 inent against the town, or the inhabitants of the town of Halifax. It is against the defendants individually, for
 
 neglect
 
 of the duty of reparation which it alleges that the law has imposed upon them. We know of no public law which obliges the persons who may bo commissioners of any incorporated town to keep the streets in order, and w'henever an indictment is preferred against those who arc not bound by the common law and of common right to repair, such indictment must set forth the matters by reason whereof the obligation has been devolved on the persons charged,
 
 ( Rex
 
 v
 
 Inhabitants of Great Broughton, 5 Bur.
 
 2700.)
 

 In an indict--CommSnLsof a town, it is not a gcner^breach
 
 f
 
 .duty, but the-cilarge i5pecificaZty which of the duties imposed has boon neglect-. Cil-
 

 The count is further defective that it sets forth no breach of any specific duty which the acts regulating the town of Halifax impose on the commissioners. The
 
 corpus delicti
 
 is that the streets were permitted to be out of repair, and the indictment assumes that the defendants as commissioners were bound to prevent this public inconvenience. Now all the obligations imposed on the , . . , , ,. ’ ,. „ commissioners nave been imposed by one or the oilier oí these acts. These are for instance, to levy annually a certain tax not exceeding a given rate — to make the proper arrangement for collecting it, to apply the proceeds when received, towards the repair of the streets, the payment of public officers, and to such other public purposes as the commissioners shall think proper — and to make all such rules, ordinances and regulations as they may deem expedient for reparation of the streets. None of these acts declare, as does our public act of 1786 with respect to overseers of the roads, that for a neglect in keeping the streets in order the commissioners shall be liable to indictment. Certain means are put into the power of the commissioners "for the accomplishment of certain ends. If there bo a culpable neglect to use these, means when there is a necessity for their use, those guilty of such neglect may be liable to indictment. But then the indictment must set forth the criminal omission, so that the defendants may know, and the Court see, what duty has been neglected. It must not allege neglect generally, still less state merely the consequence of the.
 
 *351
 
 neglect of. duty — but specify the offence producing such consequence. These principies are so distinctly asserted and explained in the case of the
 
 State
 
 v
 
 the Justices of Lenoir,
 
 (4
 
 Hawks
 
 194) that we deem it unnecessary to enlarge upon them. It is true that in a case which came before the former Supreme Court of the
 
 State
 
 v
 
 the Commissioners of Fayetteville,
 
 (2
 
 Law. Rep.
 
 617) this objection might have been taken to the indictment, but was overlooked or waived. But the subsequent case of the
 
 State
 
 v
 
 the Justices of Lenoir
 
 is an express adjudication upon the point. We feel ourselves bound by it as authority, and the more strongly, as the principles which it upholds tend greatly to the certainty of criminal prosecutions, and are therefore important safeguards of civil liberty.
 

 The case of
 
 The State
 
 v
 
 Justices of Lenoir,
 
 (4
 
 Jlawks,
 
 194,) approved.
 
 The State
 
 v
 
 Commissioners of Fay-etteville,
 
 (2
 
 Imid. Jlep.
 
 617,)doubt-«3-
 

 Tiie Court is of opinion that the judgment rendered in the Superior Court should be reversed, and that judgment should be arrested, and it will direct a certificate to issue to that court accordingly.
 

 Per Curiam.' — Judgment arréstete