STATE v. W. W. COVINGTON.

(Decided November 14, 1899.)

*Working Public Roads—Public Duty—Excuse—Sickness—
Service of Notice—Sufficiency of Warrant—The Code,
Sec. 2020.*

1. As a general rule, it is sufficient if the indictment (or warrant)
   follows the words cf the statute.
2. The personal service of summons to the work hand  means ser-
   vice on him personally, and not service by the overseer per-
   sonally.
3. The statutory requirement to work on the public roads, is not a
   tax, but a duty—inability to perform it, through sickness. :s
   a full defense. *State v. Sharp*, at present term.

STATE WARRANT for failure to work the public road, heard
upon appeal from the Justice's Court, by *Robinson, J.,* at
April Term, 1899, of the Superior Court of RICHMOND
County.

By consent, the jury returned the following special verdict:

That on the 18th of April, 1898, the defendant was noti-
fied to work the public road in the county of Richmond, lead-
ing from ———— to ————.

That said road had been established according to law, and
had been worked as such, under the law, since the year 1867.
That the defendant was on the aforesaid —— notified to
work the road on the 22nd day of April, 1898.   That on the
22nd day of April, 1898, the defendant was so sick  that he
was unable to work the road.   That the said notice to the
defendant was not given by the road overseer, George W.
McIntosh, but by one L. W. Stubbs, who was directed by the
said overseer to notify the defendant.·   That on the 22nd day
of April, 1898, the defendant, W. W. Covington, was the

owner of more than $500 in property, but did not have $1 in actual cash, on the said date. That the defendant did not work the said road at the time when he was so notified to work, to-wit, April 22, 1898, and he did not pay $1 to the overseer, under the statute.

That the Board of Supervisors met in February, 1898, and August, 1898, and at no other times that year.

If, upon the foregoing facts, the Court should be of the opinion, that as a matter of law, the defendant is guilty, then the jury so find. If upon these facts, the Court should be of the opinion, that as a matter of law, the defendant is not guilty, then the jury so find.

Upon the foregoing, the Court doth adjudge that the defendant is not guilty; that he be discharged.

The Solicitor for the State appeals to the Supreme Court from the foregoing judgment. Defendant recognized to appear at December Term, 1899.

W. S. O'B. ROBINSON,
*Judge Presiding.*


*Messrs. Zeb. V. Walser,* Attorney-General, and *J. D. Shaw, Jr.,* for the State.

*Messrs. W. H. Neal,* and *J. H. Cook,* for defendant.


CLARK, J. This was an indictment for failing to work the public roads. The first exception is because the warrant does not charge that the defendant "unlawfully and willfully" failed to work the public roads. Those words are not in the statute, Code, sec. 2020, and as a general rule it is sufficient if the indictment follows the words of the statute. *State v. George,* 93 N. C., 567, and cases cited. The fact of failure to work the roads by one liable to such duty, after being notified, and without paying the $1 to procure exemption, constitutes the offense without allegation or proof of willfulness,

any excuse, as in the present case being a matter of defense. The omission of the words "willfully and unlawfully," therefore, is not fatal. *State v. Howe,* 100 N. C., 449.

Another exception is, that the summons to work the road was left at the house of the defendant, not by the overseer himself, but by another acting as his agent or deputy. We do not see how the defendant was injuriously affected thereby or why the overseer could not send the notice by another to be left at the defendant's house. The defendant relies upon the provision in The Code, sec. 2044: "When an overseer shall not be able to *personally* notify the hands * * * he shall leave at the house a written summons." The personal service therein mentioned means service on the defendant personally, and, if not to be had, then by leaving notice at his house—it does not mean service by the overseer personally (which is not even required of the sheriff in serving legal process), and therefore that service by his agent or deputy is void.

The defendant further contends that he is not guilty, because the special verdict finds "that the defendant was notified to work the road on the 22nd of April, 1898; that he was sick on that day, and was so sick that he was unable to work the road." It has been decided at this term, in *State v. Sharp,* that the statutory requirement of all able-bodied male persons between the ages of eighteen and forty-five years to work on the public roads is not a tax, but a duty, similar to service on the jury, grand jury, on the special venire, military service, or as a witness, which duties the State can exact without compensation, or at prices fixed by the State, usually less than would compensate the parties. It was also held a duty and incumbent upon a resident, though he was not a citizen. *State v. Johnston,* 118 N. C., 1188. Being a duty, sickness causing inability to perform it is a full defense, as in the

case of the other duties above recited. The $1 to be paid the day before, by each person not intending to work, is a payment exacted of those who have no sufficient excuse for not rendering the service, and who are thus authorized to procure exemption, by paying an amount deemed sufficient to purchase a substitute. The statute does not require the $1 of one, who, by reason of illness, is unable to perform the duty.

Working the roads by conscription of labor was the common-law method. It was part of the *trinoda necessitas,* from which no man was exempt, and the same was true under the civil or Roman law, *nullum genus hominum, nulliusque dignitatis ac venerationis meritis cessare oportet,* C. 11, 74, 4. As late as the statute 13, George III, chap. 78 (1773), the duty of working the public roads was obligatory upon all able-bodied males between the ages of eighteen and sixty-five, or to send a laborer, but this statute limited the exaction to six days in the year (like our Code, sec. 2017), and required property to contribute in teams and in money. This was an advance on the previous common-law system, under which labor alone bore the burden of maintaining the highway, and, in its turn, has long years ago been superseded in England by the present system of working the roads by taxation. In France the same duty was imposed upon labor alone of working the highways, a duty known as *corvees,* a grievance which contributed powerfully to their revolution of a century ago, since which time the roads have been worked by taxation. The supervision of roads and bridges was held so honorable a duty among the Romans, that their highest religious official was styled *Pontifex Maximus,* i. e., "head bridge builder," whence the title of Pontiff still worn by the Pope, and Cicero, in his letters to Atticus (11, ep. 1), says, that a road overseer was colleague of Julius Cæsar in his candidacy for the Consulship. 1 Bl. Com., 358, note.

Upon the special verdict, the Court below properly held that the defendant was not guilty.

Affirmed.