STATE v. YODER.

(Filed June 10, 1903.)

1. INDICTMENT— *Warrant—Complaint—Highways — Quashal of War-rant.*

A complaint describing a road, naming the county wherein it lies, alleging the person summoning to have been the overseer of that particular road; that the defendant was a citizen of the county liable to work on said road and duly assigned thereto, and that he had been duly summoned, giving time and place; that he wilfully and unlawfully failed to work, and also nega-tived the payment of one dollar, is sufficient to support a war-rant for failure to work a public road.

2. HIGHWAYS—*Failure to work—Summons—Notice—The Code, Sec. 2019.*

That a person was summoned to work a public road three consecu-tive days, the law providing that hands shall not be required to work continuously for longer than two days at any one time, is no defense for failing to work the first two days.

3. HIGHWAYS—*Failure to work—Evidence—Judgment—County Commis-sioners—Collateral Attack.*

In an indictment against a person for failure to work a public road the order of the county commissioners laying out said road is competent evidence to show the establishment of such road and such judgment cannot be collaterally attacked.

4. HIGHWAYS—*Assignment to Work.*

That a person had been assigned to work a public road is no de-fense to an indictment for failing to work another road to which he had been subsequently assigned.

DOUGLAS, J., and CONNOR, J., dissenting.

INDICTMENT against Charles Yoder, heard by Judge *B. F. Long* and a jury, at February Term, 1903, of the Superior Court of CATAWBA County.

The defendant was warranted before a justice of the peace on the following complaint: "B. B. McLurd being duly sworn complains and says that he was duly appointed over-seer by the Board of Commissioners of Catawba County,

State of North Carolina, to open a public road in said County, Jacobs Fork Township, leading from Plateau over the lands of Charles Bronce and others to a point on the King's Mountain road near the Lincoln County line; that Charles Yoder has been duly assigned, is and was liable to work on said road, he being a citizen of the said County of Catawba; that affiant at and in the said County of Catawba, State aforesaid, on 13 December, 1902, as overseer, duly summoned said Yoder to appear on the 18, 19 and 20 days of December, 1902, at a time and place named in said summons, to work on said road, and that the defendant wilfully and unlawfully failed to appear, and refused to work in accordance with said summons, and failed and refused to furnish an able-bodied hand as a substitute, with the implement directed, and failed and refused to pay the one dollar as prescribed by the statute, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State."

The justice issues his warrant against the defendant "to answer the above complaint." He was found guilty and fined two dollars and costs, from which he appealed to the Superior Court. In that court he was found guilty by the jury, fined two dollars and costs, and appealed.

*Robert D. Gilmer, Attorney-General,* and *L. L. Witherspoon,* for the State.

*S. J. Ervin, Self & Whitener* and *E. B. Cline,* for the defendant.

CLARK, C. J. The motion to quash was properly denied. The affidavit contains every allegation necessary in a proceeding to enforce a penalty for failure to work the roads. It describes the road, names the county wherein it lies, alleges that the person summoning the defendant was overseer of that particular road, that the defendant was a citizen of that county, liable to work on said road and duly assigned thereto,

and that he had been duly summoned, giving time and place, that he wilfully and unlawfully failed to appear and refused to work, and also negatives the payment of one dollar. Technical and critical fulness are not expected in proceedings of this nature, but this affidavit contains all that could be desired to give the defendant the fullest information of the charge against him, which is the only object of the complaint. Its terms were adopted by the warrant issued thereon, and come up fully to all the requirements as set out in the following cases: *State v. Smith,* 98 N. C., 747; *State v. Pool,* 106 N. C., 698; *State v. Neal,* 109 N. C., 859; *State v. Covington,* 125 N. C., 641. "The affidavit and warrant in contemplation of law are one, if one is referred to by the other" (as was here the case). *State v. Davis,* 111 N. C., 729; *State v. Sykes,* 104 N. C., 694; *State v. Sharpe,* 125 N. C., at p. 635.

The defendant places much stress upon the fact that he was summoned to work three days consecutively, whereas The Code, Sec. 2019, provides that the "hands shall not be required to work continuously for a longer time, at any one time, than two days." This would be a good defense if the alleged default was for failure to work the third day, but the notice was good for two consecutive days, and the defendant admittedly paid no attention to it and did not do any work at all, leaving the other citizens assigned to that road to do his part. They had a right to see that under the notice he worked two days or paid his $1 per day. The overseer was simply their representative in enforcing his *pro rata* part of the work. It appears from the evidence that the road was worked only two days by any one at that time, that the defendant made no objection that the notice specified three days, or it might have been then amended. He did not go to the road at all. He was fined $2 for failure to work two days only, and has in no respect been prejudiced by the notice being for three days. As a law-abiding citizen he should

have attended and worked two days as his neighbors did, and failing to do so he has no good ground to object to paying two dollars to make his share of this public duty equal to theirs.

The second objection was to the introduction of the judgment of the County Commissioners which ordered this road laid out, appointed an overseer and assigned hands, etc., and is without merit. This objection is stated in the brief to be on the ground that Chapter 336, Laws 1889, required the assignment of hands "from the body of the county." That means simply that they shall be from the road hands of the county, and the order assigning for the construction of the new road, "all the hands liable to road duty and residing in two and a half miles of the nearest portion of said road" is in accordance with what has always been the uniform understanding of the duty of County Commissioners in this regard. It has never been understood that all the hands in the county were to be ordered out. There is no provision for drawing out a part of them, like a special *venire*. The mode of assigning hands is left to the County Commissioners, and in selecting these hands near the road, and men who would be most likely to be benefitted by an use of the road, there was no oppression. Besides it has been expressly held that the judgment of the County Commissioners, ordering the laying out of the road, is final unless reversed on appeal, and any person affected could appeal. The order can not be collaterally impeached. *State v. Witherspoon,* 75 N. C., 222; *State v. Smith,* 100 N. C., 550; *State v. Joyce,* 121 N. C., 610. In this last case at page 611 the court says: "When the Board of Commissioners ordered the road to be laid out and constructed as a public county road, appointed an overseer and assigned hands to him to construct the road, and ordered him to have the work done, in the eye of the law it became at once a public road, and the hands so assigned were as much bound to attend and work as any other road hands

STATE v. YODER.

in the county, and they could not question the regularity of the proceedings of the board in the matter, and if they refused to work they are liable under the general law to indictment."

The other exceptions are for refusal of special instructions: the first prayer was a general demurrer to the evidence. There being evidence tending to prove the charge, its sufficiency was for the jury.   Clark's Code (3 Ed.), pp. 525, 526; Walser's Digest, 373.

The second prayer was in effect that if the defendant had been previously assigned as a road hand to another road he could not be assigned to this.   Every man liable to road duty in the county had been already assigned to some road, and if the defendant's assignment to the new road was illegal, it would be impossible to execute the law, a most necessary one, authorizing the County Commissioners to lay out new roads and assign hands to construct and work them.   The assignment to the new road cancelled the assignment to the former road.   Whether the number of days work already done on the first road must be deducted from the total number of days (eight) which a hand may be required to work in a year, thus restricting the number of days the defendant can be required to work on the new road to the difference, is a matter not before us, though it seems a reasonable construction.   The defendant could not be required to work on two roads at the same time (*State v. Hinton,* 131 N. C., 770), but he is not indicted for failure to work on the first road after being assigned to the new road.   The assignment to the latter cancelled the first assignment, as a matter of course.

The only remaining exception is to the refusal of the prayer to instruct the jury that as the order of the County Commissioners laying out the new road did not "provide for the assessment of damages, the same was irregular and erroneous and void and of no effect."   The order was irregular

STATE v. YODER

and erroneous as to the land owners, if thus defective, but it was not "void and of no effect" so as to authorize the defendant to impeach it collaterally. He could not be judge and jury in his own favor, and decide that the order to work the road thus laid out was a nullity, and disobey the order. *State v. Joyce*, 121 N. C., 610. If aggrieved by the order laying out the road and assigning him as one of the hands, he should have tested the validity of such order by appealing. Not having done so, he should have obeyed it.

No Error.

DOUGLAS, J., dissenting. This was a criminal action tried on appeal by the defendant from the judgment of a justice of the peace. The following is the "complaint" on which the warrant was issued: "B. B. McLurd, being duly sworn, complains and says that he has been duly appointed overseer by the Board of Commissioners of Catawba County to open out a public road in said County, Jacob's Fork Township, leading from Plateau over the lands of Charles Bronce and others to a point on the King's Mountain road near the Lincoln County line; that Charles Yoder has been duly assigned, is and was liable to work on said road, he being a citizen of the said County of Catawba; that affiant at and in the said County of Catawba on the 13th day of December, 1902, as overseer, duly summoned said Charles Yoder to appear on the 18th, 19th and 20th days of December, 1902, at a time and place named in said summons, to work on said road, and that the defendant wilfully and unlawfully failed to appear and refused to work in accordance with said summons, and failed and refused to furnish an able-bodied man as a substitute, with the implement directed, and failed and refused to pay the one dollar as prescribed by the statute, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State. B. B. McLurd."

STATE *v.* YODER.

The defendant was found guilty both before the justice of the peace and on appeal in the Superior Court.

The defendant moved to quash the warrant and in arrest of judgment. Both motions were refused by the court below and are now before us on exceptions.

I think the motion in arrest of judgment should have been granted, as the so-called complaint does not charge any criminal offense. The warrant simply directs the arrest of the defendant "to answer the above complaint."

Section 2017 of The Code provides that, "all able-bodied male persons between the ages of 18 and 45 years shall be required under the provisions of this chapter to work on the public roads" . . . . The warrant, including the complaint as a part thereof, does not allege a single one of the requisites specified in The Code. It states merely the legal conclusion that he was "duly assigned" and was "liable to work on said roads, he being a citizen of the said County of Catawba." The word "citizen" might be construed as meaning inferentially that he was a male person, but that is only one of its legal meanings, and it never can be construed to include the idea of being able-bodied and between the ages of 18 and 45. No motion was made to amend the warrant, although full notice was given by the motion to quash. It will be seen that the statute designates the class to which it shall apply, in express terms, which are words of limitation and not of exception. Now, if the statute provided that *all persons* should be required to work the roads, with certain exceptions, the case would be different, as the existence of the facts creating the exception would generally be matter of defense. It is well settled that if the words are essentially those of qualification and not of exception, even if stated under the form of an exception or proviso, they must be alleged by the State. In *State v. Norman,* 13 N. C., 222, the distinction is thus clearly drawn: "We find in the Acts of our Legislature

two kinds of provisos—the one in the nature of an exception, which withdraws the case provided for from the operation of the Act; the other, adding a qualification whereby a case is brought within that operation.   Where a proviso is of the first kind, it is not necessary in an indictment, or other charge founded upon the Act, to negative the proviso; but if the case is within the proviso, it is left to the defendant to show that fact by way of defense.   But in a proviso of the latter description, the indictment must bring the case within the proviso; for in reality that which is provided for, in what is called a proviso to the Act, is part of the enactment itself." This case has been repeatedly cited with approval and seems never to have been questioned.   *State v. Tomlinson,* 77 N. C., 528; *State v. Narrows Island Club,* 100 N. C., 477; 6 Am. St. Rep., 618; *State v. Pool,* 106 N. C., at p. 700; *State v. Davis,* 109 N. C., at p. 784; *State v. Downs,* 116 N. C., 1064.

It is true the penalty is prescribed in Section 2020 of The Code, but that section does not describe the offense, nor specify the class to which the penalty shall apply except by reference to other sections, including, of course, Section 2017. The expression "liable to work on the roads" is merely a legal conclusion from facts elsewhere stated.

While I can find no case exactly like that before us, there are many involving the same principle inasmuch as they hold the warrant or indictment invalid where it did not fully describe the offense.   In *State v. Smith,* 98 N. C., 747, it was held (quoting the syllabus), that "A warrant against a person for failing to work the roads, which fails to allege that the defendant has been duly assigned, and was liable to work on that particular road, and that he had been properly summoned, is fatally defective."   In *State v. Baker,* 106 N. C., 758, it was held (quoting the syllabus) that "A warrant charging simply that the defendant 'did refuse to work the

public road after being legally warned by P., supervisor, against the peace and dignity of the State,' is insufficient." In *State v. Pool,* 106 N. C., 698, in which the warrant was held to be fatally defective, various defects are pointed out, among others, the failure to negative the payment of one dollar in lieu of personal service. In *State v. Neal,* 109 N. C., 859, it was directly held that a warrant against one for refusing to work on the public road was fatally defective, if it failed to negative the payment of one dollar by the defendant in discharge of his liability. The Acts of 1887 (Ch. 73) and of 1889 (Ch. 338) do not affect the case at bar.

The principle above stated would be sufficient to determine this appeal. But there is one other question clearly presented in the record, as well as in the briefs of counsel, that I think it better also to discuss. The defendant requested the court substantially to charge that he could not be required to do double road duty by being assigned to two different roads at the same time. This point has been directly decided in *State v. Hinton,* 131 N. C., 770, where the court says: "We do not think that the law intends to impose upon any one the double burden of working the roads in different districts at the same time." The State contends that this exemption from double duty applies only to roads already laid out, and that "the law imposes this obligation upon him (working on a *new* road) in common with other residents of the county, *in addition* to his liability to render service in keeping in repair roads already established." We do not see the distinction. Compulsory working on the roads is in the nature of taxation and should be uniform as far as local conditions will permit. I think that the defendant should have been permitted to show where and when he had worked on the public roads during the current year, in order to get full credit for the time already given to public duty.

CONNOR, J., concurs in the dissenting opinion.