J. L. YOUNTS et al. v. COMMISSIONERS OF UNION COUNTY.

(Filed 23 December, 1909.)

1. Elections — Special School Tax — Duty of Registrar — Time for Registration—Interpretation of Statutes.

The requirements of Revisal, sec. 4323, "that it shall be the registrar's duty, between the hours of 9 A. M. and sunset on each day (Sunday excepted) for twenty days preceding the day for closing the registration books, to keep open said books for the registration of any electors residing within said township, etc., and entitled to registration," does not require the registrar to be at his home or place of registration every moment of the twenty days between the hours indicated, and a reasonable requirement is all that is necessary. And when it has been found as a fact by the lower court that every qualified voter has had a fair and ample opportunity to register, an election declaring for a special school tax will not be declared invalid by reason of the fact that the registrar left the district for a part of two days out of the twenty days required for registration.

2. Elections — Special School Tax — Benefits — Place of Election — Publication—Majority Vote—Ample Opportunity—Interpretation of Statutes.

While the statute provides that places where elections are to be held should be fixed and published by the boards of commissioners authorized by statute to call them, an election declar-

ing for a special school tax will not be held invalid for the failure
to have done so, it appearing from the facts found by the lower
court that a majority of the qualified voters of the district had
voted in favor of the tax, that the election was held at the place
in the district that all elections were held, that all the voters
knew of the place and a fair and full opportunity had been given
them to vote upon the question. Revisal, sec. 4115. In this case
the fact that a remote. section of the district struggling to main-
tain its schools at its own expense received a benefit from the tax
is no ground of complaint. Those invested with the power to call
special elections are admonished to adhere to and observe with
strictness all statutory requirements.

APPEAL from *W. J. Adams, J.,* November Term, 1909, of
UNION, and heard at chambers.

Civil action, heard on motion of plaintiffs to enjoin the de-
fendants from levying special tax for school purposes, voted
under section 4115, Revisal, in Indian Trail School District of
Union County. Upon the hearing, upon due notice, and after
considering the complaint and answers used as affidavits, and
many other affidavits, his Honor made the following order, find-
ing the facts as therein set out:

1. That on 3 May, 1909, the defendant board legally ordered
an election to be held at Indian Trail Special School District, in
Union County, North Carolina, on 5 June, 1909.

2. That on the said 3d day of May a register and judges of
election were duly and legally appointed to conduct the said
election, and the said registrar was on said day duly qualified as
such, and the registration book turned over to him for the pur-
pose of registering all qualified voters in said district; that said
registrar, after taking the oath as such, received said registra-
tion book on May 3d and went immediately to his home in said
Indian Trail School District, and arrived there some time in the
afternoon of said day; that the same was kept open until 22 May,
1909, except as hereinafter found, and closed on 22 May, 1909.

3. That said registrar was in Charlotte a portion of the 20th
day of May and a portion of the 21st day of May, but no one
during that time applied for registration and no one was de-
prived of his right to register because the said registrar was in
Charlotte.

4. That the clerk of the defendant board posted notices of the
said special election at the courthouse in said county on the after-
noon of May 3d, and duly mailed same to various places in said
district on said day, which were posted in the district on May
4th, as required by law, copy of which notice is attached to the
complaint, marked "Exhibit B."

5. That the said election was held on June 5th, as ordered by

the defendant board, at Indian Trail, where the schoolhouse in said district is located, and also where all elections are held in said district, same being the case in the township for all elections, and where two special school elections have previously been held; that the place of election at Indian Trail was known and accepted by all voters in the district as the place where this election would be held, and no voter was misled by the failure to advertise the place of holding the election, the place for holding said election being well known to all in the district, and did not discover the omission to designate the place of election until after this action was brought.

6. That the time and place for holding said election was well and generally understood and known by all in the district.

7. That every qualified voter in said district had a fair and ample opportunity to register and vote in said election if he had so desired.

8. That the election was held on June 5th, at which time there were 68 votes cast for special school tax and 34 votes cast against special school tax.

9. That there are within said district, including colored voters, one to seven male persons above the age of twenty-one years; that of this number there are eleven who could not have registered had they applied for a registration, to-wit, W. J. Anderson, Elgin Thompson, Lewis Martin, Robert Broom, Buck Crowell, Joe Morrison, J. L. Broom, A. F. Ivey, J. A. Morrison, W. J. Weddington and A. B. Vickery; that there are sixteen who might have registered if they had applied, to-wit, M. E. Conder, S. W. Gander, A. B. McRorie, Hamp Starnes, Mack Freeman, Mack Broom, Rufus Kellough, A. B. Garner, Adam Broom, Ambrose Noles, Sidney Noles, Ben Vickery, Hoyle Ivey, Dan Howie, Jesse Cline and Zeb Hartis, but failed to do so of their own choice, and of these sixteen eight would have voted for schools, to-wit, Buck Crowell, A. B. Garner, Dan Howie, Hoyle Ivey, W. H. Starnes, Elgin Thompson, Robert Broom and W. J. Weddington; that two of the registered voters who did not vote, to-wit, J. F. Privett and H. C. Privett, would have voted for schools if they had voted.

10. That if all the male persons in the district, including colored, and also including those who were disqualified, had registered, there would have been only one to seven on the registration books, and that 68, the number cast for the special school tax, would have been a majority.

11. That said election was fair, and the result is a fair expression of the wishes of the qualified electors therein.

12. That a copy of the order referred to in the first finding of fact is attached to the complaint therein, marked "Exhibit A.".

13. That on Monday, 7 June, 1909, certain residents and taxpayers in said district appeared before the defendant board and asked that the said election be declared illegal and that no tax be levied, but said board declined to set aside the election, and on the following Monday levied ____ cents on $100 valuation of property and ____ cents on the pole, within said district, and are preparing to turn over to the Sheriff of Union County the tax books containing the said extra levy, with directions to collect the same.

14. That a majority of the qualified voters in said district voted for special tax.

Upon the foregoing finding of fact, it is adjudged that this election was legal and the levy in accordance therewith is legal; and it is ordered, adjudged and decreed that the temporary restraining order heretofore issued in the said cause be and the same is hereby dissolved.

From which order the plaintiffs appealed to this Court.

*A. M. Stack* for plaintiffs.
*Adams, Jerome & Armfield* and *Williams & Lemmond* for defendants.

MANNING, J. The plaintiffs seek to enjoin the levy of the special tax for school purposes principally upon two grounds, viz.: 1. That no place was named as the polling place in the order calling the election. 2. That the registration books were not kept open for the number of days required by law. As bearing upon the two questions, his Honor finds that the election was held at Indian Trail, where the schoolhouse is located and where all elections are held for that township and district; that the place where the election was held was known to all the voters and accepted by them, and that they knew this election would be held there; that the omission to name the particular place for holding this election was not discovered by anyone until after this action was brought and after complaint was filed, so well understood was the place where the election would be held; "that the time and place for holding said election was well and generally understood and known by all in the district"; "that every qualified voter in said district had a fair and ample opportunity to register and vote in said election if he had so desired"; that the registration books were opened on May 3d by the regularly appointed and sworn registrar, and the books were kept open until and

including May 22d, except on parts of the two days, May 20th and 21st. It appears that during the parts of these two days when the registrar was absent from his home no person applied for registration. Section 4115, Revisal, requires that "the election shall be held in the district, under the law governing general elections, as near as may be." Section 4323 prescribes that it "shall be his (the registrar's) duty, between the hours of nine o'clock A. M. and sunset on each day (Sunday excepted), for twenty days preceding the day for closing the registration books, to keep open said books for the registration of any electors residing within such township, ward or precinct and entitled to registration." Disregarding the qualifying phrase, "as near as may be," in section 4115, Revisal, it was not in the contemplation of section 4323 that the registrar of election should be present at his home or the place of registration every moment of the twenty days, from nine A. M. to sunset. A reasonable compliance is all that the law would require—such presence as would enable every citizen qualified to register to have his name placed upon the registration books. A full opportunity to register is the utmost that the statute contemplates, and this his Honor finds as a fact was afforded, "that every qualified voter in said district had a fair and *ample* opportunity to register." What more could any voter have required? Was not such an opportunity, at least, "as near as may be," the strict and literal requirement of the words of the statute? All that any voter may require is a "full and ample opportunity" to complete his qualifications by registration as an elector. While we would not approve any substantial departure from the statutory period for registration for a general or special election, we would not feel justified in declaring void an election when the facts disclosed that no citizen qualified to vote was denied the opportunity to register. The purpose of every election is to ascertain the will of every citizen qualified to participate therein, and when "full and ample opportunity" is given him we do not conceive what more can be added. Upon the facts found by his Honor, which the evidence sustains, we conclude that there was no error committed by him in his ruling on this question. The decisions of this Court in the following cases support this conclusion. *De-Berry v. Nicholson*, 102 N. C., 465, in which this Court quoted these words of *Breese, J.*, in *Platt v. People*, 29 Ill., 72: "The rules prescribed by law for conducting an election are designed chiefly to afford an opportunity for the free and fair exercise of the elective franchise and to ascertain with certainty the result." *Hendersonville v. Jordan*, 150 N. C., 35. Was the omission to

name the particular place for holding the election, under the facts as found by his Honor, fatal to the election? Unless constrained to do so by some positive and unequivocal words of the statute law, we would not hold an election void where every person qualified to vote had "full and ample opportunity" to register, where he knew where the election was held, where the place was easily accessible to him, where the place at which the election was held was the place where every election for national, State, county and township officers was held. While we are not disposed to regard as directory, but as mandatory, the statutory provision that the places where elections are to be held should be fixed and published by the boards or commissions authorized by statute, and while we recognize the rule that in cases of special elections it is incumbent upon the authorities vested by legislative enactment with the power to fix the time and place to name both in the order calling the election, we do not feel authorized to vitiate an election where it is found as a fact that every person in the territory qualified to vote knew where the election was to be held and where it was held, and had an opportunity to register to qualify him to express his will, and where a clear majority of all those persons of full age and qualified (except for registration) had assented to the proposition. To annul such an election would disappoint and disregard the will of a majority, to ascertain which is the object of all elections. We, however, must again admonish those invested with the power to call special elections to adhere to and observe with strictness all the statutory requirements in order that their omissions may not jeopardize the expressed will of the people. It is always safe to regard as important what the statutes expressly direct; in observing them, no harm can result. In sustaining his Honor in this case, we can, fortunately, give effect to the express will of the majority of the qualified voters of this district without violating any well-settled principle of statutory construction. The fact that a remote section of the district, to-wit, Stallings or Atalanta, struggling with the education of its children without calling upon the public fund for aid, is to receive some aid from the public fund, ought not to arouse the condemnation of those who believe in the beneficent effects of general education. In this great cause we would do well to keep in mind the generous words of Commodore Schley, sent after the battle of Santiago, "In our victory there is glory enough for us all." We find no error in the order of his Honor, and the same is

Affirmed.