BOARD OF COMMISSIONERS OF THE CITY OF HENDERSONVILLE v. C. N. MALONE & COMPANY.

(Filed 19 May, 1920.)

1. **Municipal Corporations—Cities and Towns—Bonds—Elections—Ordinances—Publication—Irregularities.**

The validity of municipal school bonds is not affected by the fact that the ordinance required that the validity of the resolution could only be questioned by action, etc., within thirty days from its *last* publication,

COMRS. *v.* MALONE.

when the statute authorizing the ordinance requires that its validity could only be questioned within thirty days after its *first* publication, there being no statutory requirement making the manner of publication essential to the validity of the bonds, or mandatory, and it appears that the election called for was fairly held, giving the voters full opportunity, and it resulted in a large majority in favor of the bonds.

2. **Municipal Corporations—Cities and Towns—Elections—Ordinances—Notice—Meetings.**

The validity of a municipal election in favor of school bonds may not be successfully attacked on the ground that an ordinance authorizing the election had not a full attendance of the board when nearly all of the members were present, and all had notice of the meeting and its purpose.

3. **Municipal corporations—Cities and Towns—Elections—School Bonds—Ordinances—Publication.**

Where a municipal ordinance calling for an election to vote upon the question of the issuance of school bonds has been published but once in a newspaper of wide circulation among the voters, instead of once a week for four successive weeks, provided by the statute, the statute does not make the validity of the bonds to depend upon the longer or more extensive publication, and the failure of compliance therewith. does not affect the validity of the bonds, when every qualified person has cast his vote thereon, and the issue sustained by a large majority of those voting, without challenge.

4. **Elections— Ballots— Forms—Ordinances—Statutes—Directory Acts—Irregularities—Municipal Corporations—Cities and Towns.**

There being no exact language essential to the validity of a ballot upon which the question of a proposed school bond issue shall be submitted to the voters at a municipal election under a city ordinance, the form of sec. 22, ch. 178, Laws 1919, known as the "Municipal Finance Act," "for the ordinance" or "against the ordinance" is directory and not mandatory, and a ballot with the words "for school bonds" or "against school bonds" is a substantial compliance therewith, and this departure alone will not affect the validity of the bonds issued accordingly.

5. **Elections — Publishing Returns — Statutes — Irregularities — School Bonds.**

Objection to the validity of the election, that the returns for and against an issue of school bonds had not been published as required by sec. 22, ch. 178, Laws 1919, may not be sustained, there being nothing in the act indicating that such publication was essential, it appearing that the books were kept open for the period required by law for registration, with full notice to the voters, and no prejudice sustained thereby.

APPEAL by defendant from *Webb, J.,* at chambers in Asheville, 10 April, 1920.

This was a controversy submitted without action, to determine the validity of $30,000 of school bonds issued by the town of Hendersonville, under an ordinance authorized by ch. 138, Laws 1917, as amended by ch. 178, Laws 1919, and known as the "Municipal Finance Act." The

defendants, who purchased said bonds on 20 October, 1919, now decline to pay for them upon the ground that they are not valid. From a judgment in favor of the plaintiff the defendants appealed.

*E. W. Ewbank for plaintiff.*
*G. A. Thomasson and C. N. Malone for defendants.*

CLARK, C. J. The first exception of the defendants to the validity of the bonds is that the ordinance under which they were issued provides: "Any action, or proceeding, questioning the validity of the resolution must be commenced within 30 days after its *last* publication," whereas, the statute authorizing the ordinances requires (sec. 20) that "Any action, or proceeding, questioning the validity of said ordinance must be commenced within 30 days after its first publication."

15 Cyc., 316, says: "It is the duty of the Court to sustain an election authorized by law if it has been conducted so as to give a free and fair expression of the popular will, and the actual result thereof is clearly ascertained. . . . In the absence of fraud, mere irregularities in the conduct of an election, where it does not appear that the result was affected either by the rejection of legal votes or the reception of illegal ones, will not justify the rejection of the whole vote of the precinct." In McCrary on Elections it is said: "If, as in most cases, the statute simply provides that certain acts or things shall be done within a particular time, or in a particular manner, and does not declare that the performance is essential to the validity of the election, then they will be regarded as mandatory if they affect the result, and directory if they do not."

There is nothing in this statute which makes the manner of publication essential to the validity of the election, and the provisions as to the notice are therefore directory and not mandatory. Besides, this action is not brought to question the validity of the resolution.

The second ground of exception is that the "ordinance was passed at a called meeting at which the full board was not present, such called meeting being an adjourned meeting." Sec. 29, ch. 352, Pr. Laws 1913 (the charter of Hendersonville), provides: "The commissioners shall meet in regular meeting at least once a month for the transaction of public business, and at such other times as they shall be called to meet by the mayor, to consider only such matters as shall be set forth in the call."

The record shows that all the members of the board had notice of the meeting and of its purpose, and that 5 out of 6 members of the board attended, and the mayor himself presided at the meeting when the ordinance was adopted.

The third ground of exception is: "Said ordinance of 12 August, 1919, was published only one time, i. e., on 14 August, 1919, whereas, the Municipal Finance Act, sec. 20, required that it should be 'published once in each four successive weeks after its final passage.'"

The statute, however, does not make publication for four successive weeks essential to the validity of the election, and it appears that the ordinance was published in full in the *Hendersonville News* (a paper of large and general circulation in the town), and it further appears that at the election every qualified voter in the town voted upon the proposition, and it was sustained by a large majority of those voting— no elector entitled to vote was rejected, and none not entitled to vote cast a ballot.

The fourth ground of exception is that the ballot used in said election carried the words, "For School Bonds" or "Against School Bonds," whereas, sec. 22 of the statute provided the ballot should contain the words "For the Ordinance" or "Against the Ordinance." There being nothing in the statute making the exact language essential to the validity of the ballot, and the words used carrying practically the same meaning the requirement was directory and not mandatory, and we think a substantial compliance, upon the facts agreed, as every elector voted.

The last exception is that the registrar and the judge of said election appointed by the resolution of 12 August having resigned 3 September, another registrar and judge of election were appointed in their stead. This not infrequently happens. The appointment of the registrar and judge of election who acted was duly posted. The names of the original appointees were not posted, and there is no evidence that there was any damage caused, or that any elector was misled.

There is also objection that election returns for and against the school bond ordinance was not published as required by sec. 22 of the act, but there is nothing that indicates that such publication was essential to the validity of the election, or that any prejudice has been sustained thereby. The books were kept open for the period required by law for registration, and the voters had the fullest notice, for they all voted.

In *Hill v. Skinner,* 169 N. C., 408, it is said: "While, so far as the officers are concerned who are charged with the duty of giving notice, the requirement as to notice is imperative, yet it will be regarded, otherwise, as directory, if the result would not be changed by a departure from the provisions of the statute. The law looks more to the substance than to the form, and if it appears that a clear majority of the qualified voters have cast their votes in favor of the proposition submitted to them, and that there has been a fair and full opportunity for all to vote, and that there has been no fraud, and the election is in all respects free from taint of any sort, so that no well founded suspicion can be cast

upon it, it would be idle to say that this free and untrammeled expression of the popular will should be disregarded and set aside." . . . "If a set of men do that, in the same way and with the same effect, which they could have done if there had been notice to do it, and there would be no essential difference in the result with or without notice, the law attaches less importance to the giving of notice under such circstances, and will not invalidate the result." To the same purport are McCrary on Elections (3 ed.), sec. 190; *Younts v. Comrs.,* 151 N. C., 582; *Hendersonville v. Jordan,* 150 N. C., 35; *Rodwell v. Rowland,* 137 N. C., 633; *Claybrook v. Comrs.,* 117 N. C., 458; *R. R. v. Comrs.,* 116 N. C., 563; *DeBerry v. Nicholson,* 102 N. C., 465; *Deloatch v. Rogers,* 86 N. C., 357.

The requirements of the statute should have been complied with, but when, as here, the failure to do so is in matters directory only, and has not prejudiced the result of the election, the irregularity will not vitiate the election. 10 A. and E., 756.

Affirmed.