The action was brought to enjoin the levy of a school tax in Gray's Creek Township. A restraining order was granted, and the cause came on before Judge Guion for final hearing, whereupon, after considering *Page 322 
the evidence and finding the facts, the judge dissolved the restraining order and directed the commissioners to proceed with the levy of the tax. The following facts were found by the judge:
"This cause coming on to be heard at the time and place agreed on by counsel for the hearing under the restraining order heretofore issued by his Honor, C. C. Lyon, and being heard upon the complaint and answer herein, and the exhibits and affidavits, and the oral testimony of D. L. Downing, register of deeds and ex officio clerk of the board of commissioners of Cumberland County, the court finds the facts to be as follows:
"1. That a petition signed by one-fourth of the freeholders of Gray's Creek Township, Cumberland County, North Carolina, asking for a special school tax for the entire township, duly indorsed and recommended by the board of education of Cumberland County to the board of commissioners of said county, was duly filed with said commissioners, considered, and favorably acted upon by them on 7 June, 1920, and an election ordered thereunder to be held on 7 July, 1920, and then and there at the said meeting N. H. Jones was appointed as registrar, and Frank Marsh and H. T. Budd as judges.
"2. That the said clerk of the board of commissioners was not present when the petition was acted upon by the board of commissioners, and that the petition did not actually come into his hands until on or about 21 September, 1920.
"3. That the said petition and action thereon were regular and sufficient, and that sufficient notices were posted, giving notice of said election, and also proper and sufficient advertisement was published in theFayetteville Observer, a newspaper published in said county.
"4. That pursuant to the order and notice, the election was held on 17 July, 1920, at which election 126 qualified voters voted a ballot `For consolidated schools, Gray's Creek Township,' and 35 qualified voters voted a ballot `Against consolidated schools, Gray's Creek Township,' and that there were 183 voters in said township qualified for the said election.
"5. That the said vote was canvassed by the election officers, the result declared, and a report made to the commissioners of Cumberland County and accepted by them, as appears in this record.
"6. That 108 of the qualified voters of Gray's Creek Township fully understood the proposition before them to be for a special tax as appears by affidavits herein; that they were not deceived or misled by the wording of the ballots, which ballots read, `For consolidated schools, Gray's Creek Township,' and `Against consolidated schools, Gray's Creek Township,' and that the election was a free and fair expression of the will of the people on the proposition of tax or no tax for the township for school purposes. *Page 323 
"7. That said township has had for several years two special-tax school districts, and three nonspecial-tax school districts, the said five districts comprising the entire township.
"8. That less than one-fourth of the freeholders of the nonspecial-tax districts signed the petition for the election, and less than a majority of the qualified voters of the nonspecial-tax districts voted ballots reading, `For consolidated schools, Gray's Creek Township,' and that the freeholders signed the petition and the qualified voters voted at the election without regard to school district lines.
"9. That a majority of the qualified voters of said township voted at said election for consolidation, which they understood carried with it a special tax for school purposes, in accordance with the petition for and notice of the said election, and the court so finds.
"It is now, therefore, ordered, adjudged, and decreed that the said election be, and the same is hereby declared valid and sufficient to authorize, and does authorize, the levy and collection of a special tax, as asked for in the petition; that the restraining order heretofore issued in this cause be, and the same is hereby dissolved; that it is the duty of the said commissioners of Cumberland County to levy tax, and they are hereby so directed to do, and it is further decreed that the defendants go hence without day and recover their costs of the plaintiffs and their sureties. O. H. GUION, Judge."
To the foregoing judgment plaintiffs excepted and appealed to the Supreme Court.
The petition for the election, which was filed with the board, with the order thereon, and the notice of the election, all being mentioned in the judgment of the Court, are as follows:
To the board of county commissioners of Cumberland County, NorthCarolina:
We, the undersigned freeholders constituting one-fourth of the freeholders in Gray's Creek Township, Cumberland County, North Carolina, most respectfully petition your honorable board for an election to ascertain the will of the qualified voters within Gray's Creek Township, said county and State, whether there shall be established a special school-tax district in and for and comprising Gray's Creek Township, said county and State, as the boundaries of said township are now constituted, with the annual tax of not more than 30 cents nor less than 10 cents on the one hundred dollars valuation of property under the valuation ordered by the General Assembly of North Carolina at its session in 1919, or subsequent valuations, and not more than 90 cents and not less than 30 cents on the poll, for the purpose of supplying the public school fund *Page 324 
for said district and maintaining a high school as may be required by law. And whether the said township school district, through its proper school officials or authority, shall issue and sell bonds in an amount not exceeding $25,000 to run for a period of twenty years, the proportionate parts thereof being payable annually during the said term, and the tax levy to be sufficient hereunder to pay the interest and maturing bonds from year to year, the proceeds of said bonds to be paid to the proper school authorities of the said district for the purpose of erecting proper building or buildings for a public school under the law, rules and regulations governing the same, and for the purpose of purchasing a site for said buildings and the equipment of the said schoolhouse and buildings, and such accessories and transportation equipment as the governing authorities may deem necessary, and upon the voting of the said tax and sale of the bonds of Gray's Creek Township, then the existing tax in andfor King Hiram and Gray's Creek districts in the said township shall automatically cease, and not be levied thereafter, such vote repealing the existing tax provided for in said districts, but a failure of the said vote hereby petitioned for shall not disturb or repeal the said existing tax, or existing school district boundaries within the said township. (Here the names of petitioners are set forth.)
Petition was filed and following order made: Ordered that a special election be held in Gray's Creek Township for the purpose of a special school tax on 17 July, 1920.
NOTICE OF ELECTION.
Notice is hereby given that the Cumberland County board of commissioners have called a special election to be held in Gray's Creek Schoolhouse, in Gray's Creek Township, on 17 July, to ascertain the will of the people of that territory comprising Gray's Creek Township lying and being in the county of Cumberland, as to whether there shall be levied a special tax of not more than 30 cents on the one hundred dollars valuation of property and 90 cents on the poll, and not less than 10 cents on the hundred dollars valuation of property and not less than 30 cents on the poll to supplement the funds apportioned to said district according to the acts of the Legislature of 1911.
It is further ordered that Neill Jones be and he is hereby appointed registrar for said election, and it is further ordered that Frank A. Marsh and Tom Budd be and they are hereby appointed judges of said election. It is further ordered that a new registration shall be made, and that the election shall be held under the general laws of 1901, and all acts amendatory thereof as near as may be, and that returns shall be made to the board of Cumberland commissioners at their next regular meeting. (Duly signed) *Page 325 
Plaintiffs assigned the following errors:
1. The court erred in rendering the judgment and decree set out in the record.
2. The court erred in dissolving the temporary restraining order, and refusing to continue the same until the final hearing.
3. The Court erred in finding as a fact that one hundred and eight of the voters in said election fully understood that they were voting for a special tax for Gray's Creek Township, when the record shows conclusively that they did not vote for such tax, but voted only for "Consolidated schools, Gray's Creek Township," and such a ballot carries with it a conclusive presumption contrary to that of special tax.
4. The court erred in finding as a fact that a majority of the qualified voters of Gray's Creek Township understood that their vote for consolidation carried with it a special tax for school purposes, for the same reasons set out in the third assignment of error.
5. The court erred in adjudging that said election was valid and sufficient to authorize the levy and collection of said tax, and to his ordering and directing the commissioners to levy and collect the same.
6. The court erred in directing a special school tax to be levied in the three nonspecial school-tax districts of said township, as less than one-fourth of whose freeholders signed the petition for said election, and less than a majority of whose qualified voters voted in said election "For consolidated schools, Gray's Creek Township," the voters in the said township as a whole having been allowed to vote, including those in the two special school-tax districts, same being equivalent to voting a tax on others that they do not have to pay themselves, the new territory being the only district that the election, in effect, required the levy of any additional tax upon, with the "automatic" discontinuance of the tax in the same amount in the two old special-tax districts.
after stating the case: It is provided by statute that special-tax districts may be formed by the county board of education in any county, without regard to township lines under the conditions which are therein set forth. Consol. Statutes, sec. 5526. Those conditions refer altogether to the levy of a tax to provide a supplementary fund for the support of schools in the district, and this tax is not to be levied unless approved by a majority of voters at an election to be held to ascertain the will of the people, residing in the proposed district, with regard to it. Machinery is provided for holding the election, and it is required that the ballots to be used shall have printed or written on them *Page 326 
"For special tax" and "Against special tax." There is no provision that the use of such ballot shall be essential to the validity of the election, or that it shall be void if they were not used, but the statute simply designates what kind of ballots shall be used by the voters to express their choice. The provision of the statute, under the facts and circumstances of this case, where the form of the ballots cannot affect the merits, should be considered as directory and not mandatory. There is no intimation in the law that a failure to comply with it in this respect should render the election void. It was merely a convenient form of ballot designated to express the will of the qualified voters upon the question submitted to them, and the ballots used by them and the surrounding circumstances show clearly and unmistakably what their intention was, so that no doubt whatever can exist as to it. If the statute expressly declares any particular act to be essential to the validity of the election, or that its omission shall render the election void, all courts whose duty it is to enforce such statutes must so hold, whether the particular act in question goes to the merits or affects the result of the election or not. Such a statute is imperative, and all considerations touching its policy or impolicy must be addressed to the Legislature. But if, as in most cases, the statute provided that certain acts or things shall be done within a particular time, or in a particular manner, and does not declare that their performance is essential to the validity of the election, then they will be regarded as mandatory, if they do, and directory if they do not, affect the actual merits of the same.
This is the rule gathered by an able text-writer from the authorities (McCrary on Elections, secs. 187 to 190, both inclusive,) and has been more than once adopted and approved by this Court. Briggs v. City of Raleigh,166 N.C. 149-154. It has been held by us that statutes prescribing rules for conducting popular elections are designed chiefly for the purpose of affording an opportunity for the free and fair exercise of the right to vote. Such rules are directory, not jurisdictional or imperative. Only the forms which affect the merits are essential to the validity of an election or the registration of an elector. This is, of course, subject to the rule as to the imperative or mandatory character of the statutory requirement.DeBerry v. Nicholson, 102 N.C. 465. When it has been found as a fact by the lower court that every qualified voter has had a fair and ample opportunity to register and vote, an election declaring for a special school tax will not be held invalid because of an irregularity not pertaining to the merits. This was substantially said in Younts v. Comrs., 151 N.C. 582. It was held in Briggs v. City of Raleigh, supra, that an irregularity in the conduct of an election which does not deprive a voter of his rights or admit a disqualified person to vote, which casts no uncertainty on the result, and which was *Page 327 
not caused by the agency of one seeking to derive a benefit from the result of the election, will be overlooked when the only question is which vote was greatest. The same principles are applicable to the rules regulating the registration of electors. This liberal rule of the law relating to elections, where not forbidden by the language of the particular statute of a mandatory character, is thus stated and applied in Hawes v. Miller,56 Iowa 395, at 396-397: "These county-seat elections are governed by the same rules that are applicable to the election of officers. In canvassing votes of electors their intentions must be ascertained from their ballots, which must be counted to accord with such intentions. If the ballots express such intentions beyond a reasonable doubt it is sufficient, without regard to technical inaccuracies, or the form adopted by the voter to express his intentions. Of course the language of a ballot is to be construed in the light of all facts connected with the election; thus, the office to be filled, the names of the candidates voted for, or the subject contemplated in the proposition submitted to the electors, and the like, may be considered to aid in discovering the intentions of the voter," citing S. v. Cavers, 22 Iowa 343; Cattell v. Lowry et al., 45 Iowa 478;Carpenter v. Ely, 4 Wis. 438; The People v. Matteson, 17 Ill. 167; ThePeople v. McManus, 34 Barb., 620; The State ex rel. v. Elwood, 12 Wis. 552;Railroad Co. v. Bearss, 39 Ind. 600; State ex rel. Phelps v.Goldthwait, 16 Wis. 146. In the construction of statutes regulating elections, it is important to keep in mind two recognized principles. (1) The legislative will is the supreme law under the Constitution, and the Legislature may prescribe the forms to be observed in the conduct of elections, and provide that such method shall be exclusive of all others; (2) since the first consideration of the State is to give effect to the expressed will of the majority, it is directly interested in having each voter cast a ballot in accordance with the dictates of his individual judgment. Recognizing the principle first above stated, the courts have uniformly held that when the statute expressly or by fair implication declares any act to be essential to a valid election, or that an act shall be performed in a given manner and in no other, such provisions are mandatory and exclusive. 15 Cyc., 317. The vital and essential question is, if the statute be not mandatory in its terms, in which case a failure to comply with it is fatal, whether noncompliance with it or a mere irregularity will avoid an election, if it does not affect the merits. Our decisions, and those of other States upon the same question, are to the effect that it will not in the specified instances.
We have discussed the question very fully in Hill v. Skinner,169 N.C. 405, and Hill v. Lenoir Co., 176 N.C. 572, and as to at least one feature of the question in Reade v. Durham, 173 N.C. 668. In *Page 328 
the last case we permitted the time when the recent constitutional amendments should take effect and be in force to be determined by something that did not appear on the ballots, and in the other case we disregarded irregularities and matters of form which did not affect the merits or the substance. It was required, in a special act, or charter, that election ballots were required to be of a certain kind, without declaring that those which were not of that kind should be void, and excluded from the count, and this Court held that, as there was no such declaration as that above stated in the statute, ballots of a different kind, cast in an election held under the statute were a mere irregularity, which did not exclude them from being included in the count of votes. Wright v. Spires, 152 N.C. 4. The Court said in R. R. v. Comrs., 116 N.C. at pp. 568-569: "We think the object of all elections is to ascertain fairly and truthfully the will of the people — the qualified voters. That registration, notice of elections, pollholders, judges, etc., are all parts of the machinery provided by law to aid in attaining the main object — the will of the voters; and should not be used to defeat the object which they were intended to aid. This being so, it is held that a substantial compliance with the provisions of the statute, under which the election is held, is sufficient. . . . They have no power to issue the bonds demanded by plaintiff, unless a majority of the qualified voters voted for the subscription. But, having the power to submit the question, a substantial compliance with the formalities of the statute in submitting the question to the people, if there was no fraud practiced, and no design in doing so to impose on the people and get them to do what they would not have done if there had been a literal compliance with the terms of the statute in submitting the question, is sufficient. And if a majority of the qualified voters of the county voted for the subscription, it is the duty of defendant to issue the bonds."
In this case it appears that in the order calling the election, and in the notice thereof, it was stated clearly and distinctly what was the question submitted to the voters, it being whether or not a tax of thirty (30) cents on property and ninety (90) cents on the poll should be levied for a particular school purpose. We have seen that the wording of a ballot is to be read and considered in the light of all the facts and circumstances connected with the election, and the subject contemplated in the question submitted to the voters, so as to discover or determine the intention of the voters, or what they meant when they cast their ballots. Thus considered, it cannot be successfully questioned that a large majority of those qualified to vote cast their ballots in favor of the levy of the tax, though the form of the ballots was for the consolidation of the separate districts into one. The phraseology of the statute was such that a vote for consolidation was in effect one for the levy of the tax, for the one *Page 329 
could not exist without the other — they must coexist. The case, therefore, is even stronger in favor of the validity of the election than some of those we have cited. Faison v. Comrs., 171 N.C. 411, and Keith v.Lockhart, ibid., 451, in the last view taken of this case, are substantially "on all fours" with this one, and sufficiently so to control our decision of it. In those cases the ballots read "Stock law" or "No stock law," and we held that they were impliedly ballots for "Tax" or "No tax," as the statute, under which the election was held, provided that a tax should be levied to pay for a county fence of the majority voted for a free range territory, or no stock law.
There is nothing in the contention that a separate election should have been held in the territory not embraced in the old district, as that territory was consolidated with them into one school district and the election was ordered to be held in the new territory to be known as Gray's Creek Township. The entire township was to be established as a single school district, and the vote was to be taken accordingly. Those of the township who did not reside in the former school-tax districts were as much entitled to vote freely and unreservedly upon the question as those who did. If we should undertake to review the judge's findings of fact, our conclusion would be the same as his. It is perfectly plain that the voters of the proposed new school district were thoroughly aware that they were voting for the school tax. All of them so testified, or nearly all.
There was not, even "in effect," anything done which discriminates against those in the three districts untaxed under the former law, nor which allowed those in the two taxed districts to levy a tax upon those in the other districts, which they themselves did not have to pay. The case ofComrs. v. Lacy, State Treasurer, 174 N.C. 141, does not apply. The election was held in the township as one entire school district, every voter having an equal right with the others to cast his vote, and thereby to express his will. There was no suggestion of fraud or other irregularity. If any one failed to exercise his right to vote it was his own fault, and he has only himself to blame, and must abide the result.
The other exceptions were formal, and, if not so, are untenable.
We affirm the judge's ruling, because there is no error therein, and it will be so certified.
Affirmed. *Page 330