STATE v. WHEELER.

(Filed March 20, 1906).

*Taxation — Labor on Roads — Double Taxation—Constitu- tional Law—Fourteenth Amendment—Poll Tax—Property Tax—Time.*

1.  A statute requiring the working of the public roads by labor is not unconstitutional as double taxation.

2.  There is no constitutional prohibition against double taxation.

3.  The fourteenth amendment does not require equality in levying taxation by the State. How the State shall levy its taxation is a matter solely for its Legislature, subject to such restriction as the State Constitution throws around legislative action.

4.  The requirement to work the roads is not a poll or capitation tax.

5.  Chapter 667, Laws 1905, amendatory of chapter 551, Laws 1903, providing for the working of the public roads of Wake County, is not unconstitutional because it exacts labor only of "able-bodied male persons between the ages of 21 and 45," and excepts "residents in incorporated cities and towns and such as are by law exempted or excused."

6.  Time is not money, nor is labor property in the sense that it can be liable to a property tax.

7.  The conscription of labor to work the public roads is not a tax at all, but the exaction of a public duty.

INDICTMENT against T. J. Wheeler for failure to work the public roads, heard by *Judge M. H. Justice* and a jury, on appeal from a justice of the peace, at the September Term, 1905, of the Superior Court of WAKE. There was a special verdict, and from a judgment of guilty thereon, the defendant appealed.

*Robert D. Gilmer, Attorney-General,* and *H. E. Norris* for the State.

*R. H. Battle* and *S. G. Ryan* for the defendant.

CLARK, C. J. The defendant appeals from a conviction and sentence for failing to work the public roads of Wake County, as required by chapter 667, Laws 1905, amendatory of chapter 551, Laws 1903. The appeal rests upon the alleged unconstitutionality of the statute. The defendant contends:

1. Time is money. Labor is a man's property and therefore to exact his labor and time to work the roads is to levy a tax on property and such is unconstitutional unless *ad valorem.*

2. That if working the road is a poll tax, the act is unconstitutional because it exacts this labor only of "able-bodied male persons between the ages of 21 and 45," and excepts "residents in incorporated cities and towns and such as are by law exempted or excused," whereas the poll tax (Const., Art. V, sec. 1,) is to be laid on "every male inhabitant between the ages of 21 and 50."

3. That the requirement to work the roads is not placed upon those living in incorporated towns and cities, and therefore there is a denial of the equal protection of the laws required by the fourteenth amendment to the Constitution of the United States.

4. That inasmuch as the roads are now worked partly by taxation, supplemented by labor exacted by the statute, and the latter is a property tax (a man's labor being his property), therefore this is double taxation.

These points have been repeatedly passed upon adversely to the contentions of the defendant. *State v. Sharp,* 125 N. C., 628, which has been cited and approved in *State v. Covington,* 125 N. C., 641; *State v. Carter,* 129 N. C., 560; *Brooks v. Tripp,* 135 N. C., 161; *State v. Holloman,* 139

N. C., 648. But counsel ask us to reconsider them, and we have given the matter full deliberation.

For near two hundred and fifty years the roads of this State were worked solely by the conscription of labor. It may have been inequitable, but it was never thought by any one to be unconstitutional, nor has the idea been advanced heretofore that to work the roads by labor was to work them by taxation. The validity of working the roads by labor is sustained in *State v. Halifax,* 15 N. C., 345, and has been recognized in countless trials for failure to work the roads. Under this statute, Wake County works its roads partly by labor supplemented by funds raised by taxation and other funds and the work of its convicts. If the exaction of the labor of residents of the locality is, as counsel contend, a tax upon property, then we simply have a higher tax, but not double taxation. The tax does not seem to be more than enough to keep the roads in good order, but if it should so prove, the people themselves, acting through their elected representatives in the General Assembly, and the board of county commissioners, will reduce it. The tendency of the times is to require better roads, which necessarily demands higher taxes for road purposes, which is more than offset, it is claimed, by the benefits derived from better roads. But that is a matter of legislation and administration. The courts cannot meddle with it. Nor is there any constitutional prohibition against double taxation. *Commissioners v. Tobacco Co.,* 116 N. C., 448; Cooley Const. Lim., 738 (7 Ed.), and cases there cited. It exists in many instances that will readily occur to any one, as the taxation of mortgages and indebtedness in the hands of a creditor, and taxation at the same time of mortgaged property, and of the real and personal property of a debtor, without reduction by reason of the mortgage or other indebtedness; the taxation of the tangible property of a corporation and also of its capital stock and of its franchises and also of the certificates of

shares in the hands of the shareholders. *Sturges v. Carter,* 114 U. S., 511; *Commissioners v. Tobacco Co., supra.* There are many other instances, but this is a matter of legislation. Certainly this is not double taxation any more than taxing the dweller in town to keep up his streets (all of which falls upon him), and also laying a tax on his property to aid in working the roads.

Nor does the fourteenth amendment require equality in levying taxation by the State, if this exaction of labor be taxation. How a State shall levy its taxation is a matter solely for its Legislature, subject to such restrictions as the State Constitution throws around legislative action. If, on the other hand, working the roads by labor is a police regulation or a public duty, certainly it is not a matter of federal supervision. Besides, as the dwellers in the towns keep up their streets at a greater expense than the value of the statutory labor put on the roads, there is no discrimination of which the defendant can complain, especially as the tax money expended on the roads to supplement the statutory labor is levied on town property as well as upon that in the country.

The requirement to work the roads is not a poll or capitation tax, which is a sum of money required to be paid by "every male inhabitant over 21 and under 50 years of age," which "shall be applied to the purposes of education and the support of the poor." Const., Art. V, secs. 1 and 2. Certainly "four days' work on the public roads" in one's own township are not capable of being applied to education, or the poor or anything else except to the roads.

This brings us to the first ground urged. To say that "time is money" is a metaphor. It expresses merely the fact that time is of value, and that the use of a man's muscle, or of his skill, or of his mentality will usually procure money in exchange. But time is not money, nor is labor property, in any other sense than that it is usually of some value and

its proceeds belong to the individual or to the parent or guardian if he is a minor, or to the State, if he is a convict. But it is not property in the sense that it can be liable to a property tax.

As already pointed out in *State v. Sharp,* 125 N. C., 634, the conscription of labor to work the public roads is not a tax at all (Cooley, *supra,* 737; *Pleasant v. Kost,* 29 Ill., 494), but the exaction of a public duty like service upon a jury, grand jury, coroner's inquest, special venire, as a witness, military service and the like, which men are required to render either wholly without compensation, or (usually) with inadequate pay, as the sovereign may require. *Guilford i. Comrs.,* 120 N. C., 26; *State v. Hicks,* 124 N. C., 837. Originally none of these received any pay whatever *(State v. Massey,* 104 N. C., 878), the duration of military service only having a time limit. And to this day witnesses, above two to each material fact, receive no pay (Revisal, sec. 1300), and witnesses for the losing party receive none unless he is solvent, and talesmen summoned upon a special venire unless chosen on the trial panel receive (except in a few counties) no pay; which was true till recently of witnesses summoned before the grand jury in all cases where "not a true bill" is returned; and witnesses for the State in criminal cases where the convicted are insolvent receive only half pay. Even when a witness or a juror receives a prescribed per diem, in most cases it is less, in many cases far less, than what his time was worth or he could have earned. If the State can take his services for less than their value it is because it has a right to require them as a public duty and hence it can, as of old, require them to be rendered without any compensation at all. Who will say that $10 per month is compensation for the time of a citizen sent to the front in time of war, or to put down riots, and for the hardships, and the exposure to weather, to disease, to danger and to death? If the State can exact such services it can exact labor to

improve its public roads for the public benefit. The worker on the roads gets back some benefits therefrom. It was a crude and not very accurate calculation or balancing of benefits, but was a necessity perhaps in former times when currency was scarce and difficult to be obtained even by taxation. It is still a matter resting in the legislative discretion. Justices of the peace and some other officials formerly discharged the public duties required of them without compensation.

In the progress of time we have gradually commenced payment, to a limited extent, for most public services exacted as a public duty. Justices of the peace receive fees. Some witnesses and jurors are paid, usually less than the value of their time, but many witnesses, and special veniremen usually still go unpaid, and compulsory military service is paid only what the Legislature sees fit. The public duty of the residents of any locality to work upon its roads has been reduced in Wake County by this statute to four days per annum, and such service is supplemented by the work of the force of county convicts, by a tax of 12½ cents upon the $100 worth of property in the cities as well as in the country to hire labor and purchase labor-saving machinery, by the appropriation of four-tenths of the net proceeds of the dispensary in Raleigh, and further by a special tax which any township shall see fit to vote for the benefit of the roads therein, and the four days' labor required can be commuted by the payment of $2.50 with which the county will hire labor instead.

This is a very great advance upon the still recent custom, which has been in force for more than two centuries, of working the roads entirely and solely by labor called out in the discharge of the public duty of the inhabitants of each locality to keep the highways in order. Whenever in the judgment of the people of Wake County the four days' labor, per annum, still exacted should be reduced, or entirely abol-

ished, they can send representatives to the General Assembly who can doubtless procure such changes as the people may wish in the manner of working the public roads. As we said at last term, in *State v. Holloman,* 139 N. C., at page 648, "It is for the legislative department to prescribe by what methods the roads shall be worked and kept in repair—whether by labor, by taxation on property, or by funds raised from license taxes, or by a mixture of two or more of those methods—and this may vary in different counties and localities to meet the wishes of the people of each, and can be changed by subsequent Legislatures."

And there, after the fullest consideration, we again leave the matter. If the system of working the public roads in any locality is not satisfactory to the majority of its people, relief or change of method must be sought from the lawmaking department.

No Error.

BROWN and WALKER, JJ., concur in result.