F. H. BRIGGS ET AL. v. CITY OF RALEIGH ET AL.

(Filed 30 May, 1914.)

**Municipal Corporations—Cities and Towns—Bond Issues—Necessaries—Single Ballot—Constitutional Law.**

> Where a municipal corporation under a special legislative act, and voted upon in accordance with its charter provisions, submits to its qualified voters the question of the issuance of bonds for necessary municipal purposes, as in this case, for extending its sewer line, purchasing a site for and building a fire station, and for permanent pavements, proportioning a certain amount to be expended for the first two items and the balance of the issue for the last one, the purposes of the various items are related to each other, the information given being for an intelligent ballot, and the bonds voted upon as a single proposition or upon a single ballot, are valid. *City of Winston v. Wachovia Bank and Trust Co.*, 158 N. C., 512, cited and distinguished.

APPEAL by plaintiffs from *Allen, J.*, at May Term, 1914, of WAKE.

This is a civil action, tried upon an agreed statement of facts. The purpose of the action is to enjoin the issuing and selling of a certain bond issue. The court denied the injunction, and the plaintiff appealed.

*W. B. Snow for plaintiff.*

*J. W. Hinsdale, Jr., Manning & Kitchin for defendant.*

BROWN, J. The defendants, in full accord with the provisions of the charter of the city of Raleigh, adopted an ordinance providing for the issue of certain bonds, the material part of which reads as follows:

BRIGGS *v.* RALEIGH.

"SECTION 1. That the city of Raleigh issue $100,000 in bonds (par value) of said city, with interest coupons attached, bearing 5 per cent interest per annum, for the purpose of extending the sewer line emptying into Pigeon House Branch to Crabtree Creek; for purchasing a site and building thereon a fire house to be occupied by Fire Company No. 2, and for building permanent pavements in said city, said bonds to be denominated 'Raleigh Public Improvement Bonds.'

"SEC. 2. That not more than $8,000 of said issue be used in extending said sewer line; that not more than $6,000 be used in purchasing a site and erecting thereon a fire house to be occupied by Fire Company No. 2, and the balance of said $100,000 bond issue be used in laying permanent pavements in the city of Raleigh."

An election was held under provisions of the city charter, requiring those who favored the proposition to vote a ticket marked "Approved," and those opposed to it, "Not Approved." Fourteen hundred and forty-six qualified electors of the city registered for the said election, and 1,020 voted "Approved" and 158 of the said voters voted "Not Approved."

The first contention of the plaintiff is that the election was void for the reason that three distinct propositions were voted together: $8,000 for sewers, $6,000 for fire house, and the balance for permanent street improvements.

The plaintiffs rely upon the leading case of the *City. of Winston v. Wachovia Bank and Trust Co.*, 158 N. C., 512, to sustain their contention. We think that there is a marked distinction between the two cases.

In the *Winston case* the voters had submitted to them the proposition of issuing $350,000 of bonds, of which amount $75,000 was to be used for street improvements, $85,000 for sewerage purposes, $40,000 for waterworks; $60,000 for school buildings, and $90,000 for larger hospital facilities. Two of these propositions, towit, schools and hospital facilities, were not necessary expenses of the city, and the total amount of $350,000 was to be apportioned in large amounts to each of the proposed propositions.

In that case the Court held that when a popular vote is required to validate a municipal indebtedness, the proposition should be single, when the question embodies two or more distinct and unrelated propositions. In that case the propositions for street improvements, necessary municipal expenses, were entirely disconnected and not related to the proposition for school buildings and larger hospital facilities, neither of which is a necessary municipal expense.

This question has been decided in different ways in different States, the matter largely dependent upon constitutional or legislative regulation. There is no constitutional provision upon the subject in this State, and there is nothing in the charter of the defendant, or in the general legislation of the State, which prohibits the submission as a single proposition for issuing bonds for public improvements.

As we construe the ordinance adopted, the proposition which the electors voted on was to issue $100,000 in bonds for public improvements in the city of Raleigh, and the sums to be devoted for the purposes mentioned were simply for the information of the citizens as to how the money was to be spent and in what proportion. It must be admitted that the purposes for which the bonds were issued are all municipal necessary expenses and closely related to each other.

In the case of *Hotel Co. v. Red Springs,* 157 N. C., 137, we held that the legislative grant of authority to a town generally to issue bonds for the purpose of providing necessary waterworks and also a necessary sewerage system is not invalid, because it provides for these two purposes in one issue, leaving the division of the proceeds to the sound discretion of the municipal authorities.

We find in other jurisdictions that bond issues have been sustained, the proceeds to be expended for different purposes, where the proposition was submitted in a single ballot.

In *Grey v. Bourgeois,* 107 La., 571, it was held: In Louisiana neither the Constitution nor the laws require more than a detailed statement of the purpose for which the debt is to be cre-

ated or the tax applied, and a proposition to incur debt for the purchase of a fire engine or the construction of an engine house and the erection of a public market in a single aggregate amount has been held to comply with the requirements of that Constitution.

In *Conklin v. El Paso* (Tex. Civ. App.), 44 S. W. Rep., 879 : Where the statute does not require it, it is not necessary that the proposition should specify the purposes for which the bonds are to be issued.

In the case of *Potter v. Lainhart,* 44 Fla., 674, it was held : A proposition for the issuance of bonds to a certain amount for the erection of a courthouse and jail, and also to a certain amount for building roads, was held valid.

In the case of *Louisville v. Park Commissioners,* 113 Ky., 409, it was held : That a proposition submitted to the voters of a municipality for the issuance of bonds to a certain amount for municipal improvements is not invalid because the purposes for which the proceeds of the bonds are to be expended, namely, city parks and sewers, are stated in the proposition.

In *Kept v. Hazelhurst,* 80 Miss., 443, it was held that where a single proposition was submitted for the issuing of bonds for the erection of an electric light plant, and also waterworks, on a single ballot, it was valid.

In the case of *City of Louisville v. Board of Park Commissioners, supra,* an ordinance passed by the city council of Louisville providing for the issue of $500,000, $250,000 of which was to be used for park purposes and $250,000 for the construction of sewers, was voted on under one ballot.

In delivering the opinion, on page 413, the Court says : "The first objection argued we do not think can be sustained. The object of the ordinance was single ; it was the issuance of city bonds to the amount of $500,000. The mere statement of the purposes for which the proceeds of the bonds was to be expended does not vitiate the submission of a single question whether the liability was to be incurred."

In the charter of the city of Winston there was some provision requiring the aldermen to specify the amount of bonds to be

issued for each specific purpose; but there is nothing of the sort in the charter of the city of Raleigh. The only provision in that charter is as follows:

"The board of commissioners shall have power to issue bonds of the city only after they have passed an ordinance by a majority vote of the entire board at two separate regular meetings, submitting the question of issuing the same to a vote of the people, and after a majority of the qualified voters shall have voted in favor thereof."

It is further contended that fifteen days notice of the new registration was not given. Yet it appears from the findings of the court that the electors of the city of Raleigh had actual knowledge of the registration, and that a very large majority of the electors did register and vote. Notice of the election and registration was published in the *Raleigh Times* and in the *News and Observer* for thirty days; and the court further finds that no citizen of Raleigh was denied the privilege of registering, but every qualified voter in the said city had ample opportunity to register, and that a very large majority of the newly qualified electors did register.

In a somewhat similar case, *Yount v. Commissioners,* 151 N. C., 582, this Court said: "And when it has been found as a fact by the lower court that every qualified voter has had a fair and ample opportunity to register, an election declaring for a special school tax will not be declared invalid by reason of the fact that the registrar left the district for a part of two days out of the twenty days required in registration."

In *DeBerry v. Nicholson,* 102 N. C., 456, it was held: "Statutes prescribing rules for conducting popular elections are designed chiefly for the purpose of affording an opportunity for the free and fair exercise of the right to vote. Such rules are directory, not jurisdictional or imperative. Only the forms which affect the merits are essential to the validity of an election or the registration of an elector."

An irregularity in the conduct of an election which does not deprive a voter of his rights or admit a disqualified person to vote, which casts no uncertainty on the result, and which was

not caused by the agency of one seeking to derive a benefit from the result of the election, will be overlooked when the only question is which vote was greatest. The same principles are applicable to the rules regulating the registration of electors.

In McCrary on Elections, secs. 187 to 190, inclusive, the proposition is laid down: "If, as in most cases, the statute simply provides that certain acts or things shall be done within a particular time or in a particular manner, and does not declare that this performance is essential to the validity of the election, then they will be regarded as mandatory if they do, and directory if they do not, affect the merits of the election."

The third contention is that notice of election is signed by the city clerk, instead of the three city commissioners. The notice recited that it was published by authority of the board of commissioners, and under instructions from them.

In the case of *Lawson v. Ry. Co.,* 30 Wis., 597, it was held: "Under a statute requiring the notice of election to be given by the board of supervisors of a town, it may be given by order of the board signed only by the clerk."

In the case of *Jordan v. Hayne,* 36 Iowa, 9: "Where it is shown that the notices required by law were in fact given, the fact that they were posted by the clerk of the board instead of by the trustees, themselves, will not vitiate the election."

In the case of *Battis v. Price,* 2 Pearson, 456, it was held: "When an election was held at the right time and place, and by the proper officers, it cannot be contested on the ground that notice to hold it was not given by the officer directed by law to do so."

Upon a review of the whole record, we are of opinion that the bonds are a valid obligation of the city of Raleigh, and the judgment of the Superior Court is

Affirmed.