This is an action brought by the plaintiff, a citizen and taxpayer of the city of Greensboro, for the purpose of having an election declared void. The election was held upon a referendum submitting to the voters a ordinance passed by the board of commissioners of said city for the creation of a school board and increasing the maximum rate of taxation for school purposes from 30 cents to 50 cents.
The case was heard in the Superior Court of Guilford County by Adams,J., upon complaint; answer, and facts agreed. The judge rendered the following judgment and opinion. *Page 451 
"This cause is heard on an agreed statement of facts.
"The plaintiff asks that the election referred to in the pleadings be declared void, and that the defendants be enjoined from exercising any right or power which the election purports to confer. He bases his prayer for judgment upon the allegations in paragraphs 11, 13, 14, and 15 of the complaint.
"1. The plaintiff claims that the ballots cast were not of the prescribed form. It is agreed that the ballots were small rectangular pieces of paper of two kinds; that upon one were only the words, `For the proposed amendment to city charter,' and upon the other only the words, `Against the proposed amendment to city charter'; that the resolution providing for the election was adopted after six days from the date it was introduced, and was published once a week for four weeks in two daily newspapers in the city; that the number of registered and qualified voters was 791; the number of voters cast for the amendment 414, and against the amendment 58 — leaving 319 of those qualified not voting. There is no suggestion in the facts agreed that the voters did not comprehend the purpose and scope of the proposed amendment. The clause `stating the nature of the proposed ordinance' (Charter, sec. 29 B) is directory, even if it be conceded that the nature of the proposed ordinance is not stated in the ballot. The form of the ballot in my opinion does not vitiate the election.
"2. The plaintiff insists that the election is void because the board of commissioners failed to provide a place in which the voter might prepare his ballot in secret. It is admitted that no booth was provided, and that persons who were not election officials or officials of the city were permitted to stand within a few feet of the ballot box. This question becomes academic upon the express admission that no person was interferred with in voting or prevented from casting a free ballot.
"3. The plaintiff contends that the board of education is not lawfully constituted, and that the attempt to vest in this board the powers of a body politic is ultra vires. He argues that the election of the board of education of commissioners is the creation by the (425) municipality of a distinct corporation which has no power to levy a tax or to condemn land. Chapter 136, Public Laws 1917, was enacted pursuant to the amendments of Article 8 of the Constitution. While the board of education may say what tax within the prescribed limits is necessary to maintain the schools, the tax is to be levied by the board of commissioners; and while it is made the duty of the board of commissioners to levy the tax certified by the board of education, the latter, in contemplation of the act of 1917, is not a separate and unrelated corporation, but a coordinate branch of the city government *Page 452 
which, under the express legislative power conferred, is authorized to ascertain and certify the rate of taxation necessary to the maintenance of the city schools.
"As to the right of eminent domain. The General Assembly usually confers this power. But the act of 1917 specially provides that the legislative power of the governing body of a city may be exercised as provided by an ordinance or a rule adopted by it. The correct interpretation of this law would probably lead to the conclusion that the board of education is empowered to condemn land by virtue of the ordinance adopted in the exercise of legislative authority, but a decision of the question is not necessary for this reason: It is not alleged in the complaint nor does it appear in the facts agreed that the board of education has undertaken to condemn the plaintiff's property or to exercise the right of eminent domain. It would be vain to declare the election illegal upon the possibility of a contingency that may never occur. The same principle applies to the plaintiff's argument concerning the diversion of school taxes. Until such diversion is attempted the judgment of the court would be premature.
"4. The plaintiff alleges that in the election two district and unrelated propositions were combined and voted for on a single ballot, to wit, the creation of the board of education and the increase of the maximum tax rate. He contends that the election for this reason is invalid. In my opinion the objection is not fatal to the election.
"The facts in the case of Winston v. Bank, on which the plaintiff relies, are distinguishable. Moreover, in that case it is held that the method of voting on the proposition of municipal indebtedness under ordinary conditions is for the Legislature. But the very purpose and effect of the act of 1917 are to confer upon municipal corporations legislative powers which may be exercised as prescribed by an ordinance of the municipality. In the exercise of its legislative power the city adopted an ordinance prescribing the form of the ballot and regulating the machinery of the election, and thereby respected the legal principle stated in the case on which the plaintiff relies. It will be observed that the proposed increase in the tax was adopted with the approval (426) of a majority of the qualified voters, and not by a mere majority of the votes cast. Upon the pleadings and the facts agreed, it is ordered and adjudged that plaintiff take nothing by his action and the defendants go without day and recover costs."
From the judgment plaintiff appeals.
For the reasons so clearly stated by the learned judge of the Superior Court, we are of opinion his judgment should be affirmed.
The case of Bank v. Winston, 158 N.C. 512, presented a very different question from the one involved in this case. In that case it is held: "When a popular vote is required to authorize or validate a municipal indebtedness, the proposition should be single, and when the question presented embodies two or more distinct and unrelated propositions, and the voter is only afforded an opportunity to express his preference or decision on a single ballot, and on the question as an entirety, the election as a rule is invalid and, on objection made, in apt time and in a proper way, may be disregarded and set aside."
It is also held that the method of submitting the matter to a vote of the people is not fixed by the Constitution, but is regulated by the Legislature.
There was only one proposition submitted to the voters of Greensboro, and that was to amend the city charter in two particulars. A proposition could be submitted to amend a section of a city charter in a dozen particulars, and yet it would be but one proposition and require but one ballot for or against the amendment. Briggs v. Raleigh, 166 N.C. 149; Keithv. Lockhart, 171 N.C. 451.
Affirmed.
Cited: Lazenby v. Commissioners, 186 N.C. 550; Jameson v. Charlotte,239 N.C. 691.
(427)