R. PAUL JAMISON v. CITY OF CHARLOTTE, A MUNICIPAL CORPORATION; AND COUNTY OF MECKLENBURG; AND S. Y. McADEN, CHAIRMAN, AND E. K. BROWN, W. CRAIG LAWING, C. J. McEWEN AND S. S. McNINCH, MEMBERS OF THE BOARD OF COMMISSIONERS FOR THE COUNTY OF MECKLENBURG.

(Filed 24 March, 1954.)

1. **Pleadings § 25—**

When each basic fact upon which the conclusions of law are predicated are admitted in the pleadings or stipulated by the parties in an agreed statement of facts, no issue of fact is raised for the determination of a jury.

2. **Appeal and Error § 6c (2)—**

An exception "to each conclusion of law embodied in the judgment" is a broadside exception and ineffectual.   G.S. 1-187, Rules of Practice in the Supreme Court No. 19 (3).

3. **Same—**

An assignment of error to the judgment presents the sole question whether the judgment is supported by the facts found.

4. **Taxation § 38 (a)—**

A taxpayer may maintain an action to enjoin on constitutional grounds the proposed issuance of bonds approved in an election irrespective of whether the action is instituted within the statutory period of thirty days after the publication of the result of the election.

5. **Taxation § 4—**

Only a single proposition may be placed on the ballot for submission to the voters in a bond election, since the submission of dual propositions would defeat the right of the voters to express their choice.   Constitution of North Carolina, Article V, Section 4; Article VII, Section 7.

**6. Same—**

In a bond election in a county and a city situate therein, the submission to the voters of the question of the issuance of county bonds in a stipulated sum and city bonds in a stipulated sum for the purpose of providing funds for erecting and equipping public libraries for the city and for the county, and the imposition of a tax within the city for the payment of the city bonds and a tax in the entire county, including the city, for the payment of the county bonds, as a single question, *is held* the submission of but a single proposition so related and united as to form a rounded whole and does not violate the Constitution of North Carolina, Article V, Sec. 4, or Article VII, Sec. 7.

**7. Taxation § 1a—**

Uniformity in taxation on real and personal property is effected when a tax is levied equally and uniformly on all property in the same class.

**8. Same: Taxation § 9—County tax for libraries and city tax for libraries held not unconstitutional for placing heavier burden on city property.**

The imposition of a tax on county property, including property within a city situate therein, to provide funds for county library purposes, and the imposition of a tax within the city to provide funds for municipal library purposes, does not violate the rule prescribing uniformity in taxation, notwithstanding that a greater burden of taxation will be placed on the taxpayers of the municipality, nor does it constitute double taxation, since one tax will be imposed by the city for municipal purposes and the other by the county for county purposes. Further, double taxation is prohibited by neither the State nor Federal Constitutions. Constitution of North Carolina, Article V, Sec. 3; Chapter 1034, Session Laws of 1949.

**9. Same—**

The rule of uniformity in taxation does not apply to the expenditure of the funds derived from a tax.

**10. Taxation § 5—**

While bonds for public library purposes are not for a necessary county or municipal expense, they are for a public purpose and may be issued by the county and by a municipality therein upon statutory authority with the approval of the qualified voters of the respective taxing units. Constitution of North Carolina, Article IX, Sec. 1; Chapter 1034, Session Laws of 1949.

APPEAL by plaintiff from *Whitmire, Special J.,* Extra February Term 1954 of MECKLENBURG.

Civil action instituted by plaintiff, a resident of, and taxpayer within, the City of Charlotte and County of Mecklenburg, to restrain by permanent injunction the City and County from issuing bonds for the purpose of erecting and equipping public library buildings for the City and County and acquiring such real and personal property as may be useful or necessary for such purposes, and levying and collecting a tax for said bonds in the City for the bonds of the City and a tax in the County, including the City, for the bonds of the County.

This civil action was in this Court before, and was remanded because the trial court had not sufficiently complied with the requirement of G.S. 1-185 as to the finding of facts. *Jamison v. Charlotte, ante,* 423, 79 S.E. 2d 797.

After this action was remanded, the plaintiff filed an amendment to his complaint, and the defendants filed an answer to the amendment admitting every allegation therein to be true, except they denied a conclusion of law pleaded.

At the February Term 1954 the plaintiff and the defendants stipulated that in addition to the facts alleged in the complaint and admitted in the answer, certain additional facts should be made a part of the findings of fact by the court.

When the case came on for trial at the February Term 1954, the plaintiff and defendants did not waive a jury trial, and agree that the Judge could find the facts, make conclusions of law and render judgment, though the parties had done so at the trial at the October Term 1953. At the February Term 1954 the Judge found as facts all of the allegations in Paragraphs One to Nine, both inclusive, of the Complaint, which allegations were admitted in the defendants' answer, though the judgment does not state these facts, except as above stated, and the Judge further found as facts, and set them forth in the judgment, all the facts stipulated between the parties in the same language used in the stipulation. The pleadings were introduced in evidence. The Record shows that the only evidence before the Judge were the pleadings and the stipulations of the parties.

It will clarify the summation of the findings of fact of the Judge essential to a decision of this case by first setting forth a summary of Ch. 1034, Session Laws of North Carolina 1949. The General Assembly at its 1949 Session enacted Ch. 1034, 1949 Session Laws of North Carolina, which is captioned "An Act to Provide for a Special Election for the Issuance of Bonds by the City of Charlotte and Mecklenburg County to Finance the Building and Equipping of Public Library Buildings." This Act provided that the Governing Board of the City and County may, by a majority vote of each body, after 30 days notice at the courthouse door and publication in the newspapers, order a special election to determine the will of the people of the City and County as to whether the Governing Body of the City shall issue City Bonds in a sum not less than $500,000.00 and not more than $1,000,000.00 and to provide for the payment thereof, and as to whether the Board of County Commissioners shall issue the County's Bonds in a like sum, for the purposes set forth in the caption of the Act. This Act provided that each voter in the City shall be supplied by the election officials with a ballot on which the form of the question shall be in substance "For City and County Library Bonds" and

JAMISON *v.* CHARLOTTE.

"Against City and County Library Bonds"; and each voter in the County outside the City with a ballot worded in substance "For County Library Bonds" and "Against County Library Bonds." The Act goes on to provide that if a majority of the votes cast in the entire County shall approve the issuance of the bonds, and also if a majority of the votes cast within the City shall approve the issuance of the Bonds, then the Governing Body of the City shall issue and sell Bonds of the City in the amount previously determined, and pledge the faith and credit of the City to the payment of the Bonds, and shall annually levy and collect an *ad valorem* tax to pay the principal and interest on the Bonds, and the Board of County Commissioners shall issue and sell Bonds of the County in a similar manner. The Board of County Commissioners and the Governing Body of the City shall, acting jointly and upon the voting basis pursuant to the provisions of the law governing the joint meetings of said bodies, have the direction and control of the expenditure of all funds from the sales of said Bonds, and shall approve and make all contracts covering the purchase of property and the erection and equipment of buildings for library purposes, which funds shall be disbursed by their respective treasuries. The title to property acquired shall be vested in such trustees, organizations or corporations, as the said Joint Bodies shall determine in their discretion, and no property now owned or hereafter acquired shall be sold, encumbered, conveyed or otherwise disposed of, except by joint action and approval of the Board of County Commissioners and the Governing Body of the City to be exercised in a joint meeting. This Act applies only to Charlotte and Mecklenburg County, and shall be in force for ten years after ratification, and only one election shall be held under its authority.

This is a synopsis of the Judge's findings of fact.

1. The plaintiff is a citizen and resident of the City and County, and owns property therein subject to taxation.

2. On 12 November 1952 the Governing Body of the City pursuant to Ch. 1034, 1949 Session Laws of North Carolina and the Municipal Finance Act 1921, as amended, adopted an ordinance authorizing $800,-000.00 Library Bonds of the City, and a resolution calling a special bond election to be held 13 December 1952 for the purposes set forth in Ch. 1034, 1949 Session Laws, and following the procedure therein set forth. The form of the official ballot used in the City of Charlotte is as follows:

"OFFICIAL BALLOT

SPECIAL BOND ELECTION ON DECEMBER 13, 1952
CITY OF CHARLOTTE AND COUNTY OF MECKLENBURG, NORTH CAROLINA

"LIBRARY BONDS

"*Instructions*

"1. To vote for the question submitted below, make a cross (X) mark in the square to the left of the word 'FOR.'

"2. To vote against the question submitted below, make a cross (X) mark in the square to the left of the word 'AGAINST.'

"3. If you tear or deface or wrongly mark this ballot, return it and get another.

"*Question*

"Shall an ordinance passed November 12, 1952, by the City Council of the City of Charlotte, authorizing not exceeding $800,000.00 Library Bonds of said City, and an order finally passed November 10, 1952, by the Board of Commissioners for the County of Mecklenburg, authorizing not exceeding $800,000.00 Library Bonds of the County, for the purpose of providing funds for erecting and equipping public library buildings for the City of Charlotte and Mecklenburg County and acquiring such real and personal property as may be useful or necessary for such purposes, and a tax for said bonds in the City of Charlotte for the bonds of said City, and a tax in the entire County of Mecklenburg, including said City, for the bonds of said County, be approved?

"☐ *For* City and County Library Bonds

.☐ *Against* City and County Library Bonds

"LILLIAN R. HOFFMAN
Facsimile of signature of City Clerk
W. C. DAVIS
Facsimile of signature of Chairman of
County Board of Elections.

"Facsimile of signature of Clerk of
Board of Commissioners."

3. On 10 November 1952 the Board of County Commissioners of the County acted in a similar manner as the Governing Body of the City for a like sum of county bonds. Paragraph four of the Complaint is not clear, but it would seem that the voters in the County outside the City were supplied the same form of ballot as the voters in the City.

4. At the election held on 13 December 1952, 4,447 of the qualified voters within the City cast their ballots "For City and County Library Bonds," and 1,919 of such voters within the City cast their ballots "Against City and County Library Bonds." At this election 5,872 of the

qualified voters of the entire county voted for said bonds and 2,554 such voters voted against said bonds. Though it is not set forth in the pleadings, nor found as a fact by the Judge, it would seem that of the qualified voters of the County outside of the City, 1,425 voted for the bonds and 635 against the bonds.

5. The Governing Body of the City and the Board of County Commissioners on 17 December 1952 caused to be published in newspapers published in and having a general circulation in the City and County, the result of the Library Bond Election, and a notice to the citizens and taxpayers of the City and County to the effect that no right of action or defense founded upon the invalidity of the said election shall be asserted, nor shall the validity of such election be open to question in any court upon any ground whatever, except in an action or proceeding commenced within 30 days after the publication of this statement.

6. On 13 May 1953 the Governing Body of the City adopted a resolution providing for the issuance of $800,000.00 Library Bonds of the City authorized at the election held on 13 December 1952 and fixing the form and details of the bonds.

7. On 11 May 1953 the Board of County Commissioners adopted a similar resolution for the issuance of $800,000.00 Library Bonds of the County authorized at the same election and fixing the form and details of the bonds.

Thus far we have stated the facts alleged in the Complaint and admitted in the Answer of the defendants. The only other facts found by the Judge were the stipulated facts which follow.

"(1) That the proposed bond election was not for the purpose of establishing any new system of libraries for Charlotte and Mecklenburg County, but was for the purpose of extending and enlarging a library system already in existence, which library system is a corporation duly chartered by the Legislature of 1903, and because of an endowment from Andrew Carnegie became known as the Charlotte Carnegie Public Library.

"(2) That by act of the Legislature this Library is now 'Public Library of Charlotte and Mecklenburg County' and is governed by a Board of eight Trustees, two of whom are appointed by the Mayor of the City of Charlotte; two are appointed by the Chairman of the Board of County Commissioners of Mecklenburg County, and the other four consist of the Mayor of the City of Charlotte, the Superintendent of the Public School System of the City of Charlotte, the Superintendent of the Public School System of Mecklenburg County, and the Chairman of the Board of County Commissioners of Mecklenburg County.

"(3) That at the time of the bond election referred to in this proceeding, this Library corporation operated a system consisting of the main

Library in the City of Charlotte and also branches located in the Towns of Matthews, Pineville, Huntersville, Cornelius and Davidson. Two branches are also operated exclusively for Negroes, one on Brevard Street in the City of Charlotte and another in the community known as Fairview Homes, and it is proposed that these branches be enlarged and expanded and possibly additional branches established, and that the Library also operates two large Bookmobiles on regular bi-weekly schedules with designated stops, both within and outside the City of Charlotte.

"(4) That all books and other material dispensed by this Library system are completely interchangeable among all of the above branches and that no distinction is made between the materials available for the Negro branches and that obtainable from the branches for White people.

"(5) That any resident of Mecklenburg County may obtain the services of this Library system regardless of his place of residence, the main branch inside of the City of Charlotte being regularly patronized by citizens of Mecklenburg County living outside of the City.

"(6) That this Library system is supported by countywide taxation, a $2500.00 annual appropriation made by the City Council of the City of Charlotte, having been approved by a vote of the people of said City; and by a percentage of the net profits from the operation of the Alcoholic Beverage Control Stores throughout Mecklenburg County under special provision in the Alcoholic Beverage Control Act.

"(7) That the valuation of property in Mecklenburg County for *ad valorem* taxes in 1953 was approximately $468,482,000, and the valuation of property inside the City of Charlotte was approximately $351,354,000, so that property inside the City of Charlotte bears approximately 75% of the County *ad valorem* tax burden; that such relative valuations will probably continue to be substantially the same during the period over which the proposed bonds will be retired."

The Judge entered judgment that the judgment entered herein 15 October 1953 including the findings of fact and conclusions of law therein be, and the same are ratified and affirmed in all respects, and the prayer of the plaintiff for injunctive relief is denied. The judgment referred to entered at the Extra Civil Term October 1953 of Mecklenburg so far as material is: "the Court finds as a fact that said Library bonds are for a public purpose, having been duly authorized by a vote of the people in accordance with Chapter 1034 of the North Carolina Session Laws of 1949, and is of the opinion and concludes as a matter of law that said bonds are for a public purpose and that said Chapter 1034 of the North Carolina Session Laws of 1949 is constitutional and does not violate the sections of the Constitution cited by the plaintiff in his complaint, or otherwise, and that the bonds to be issued pursuant to the election held thereunder will be valid obligations of the City of Charlotte and Mecklen-

burg County, respectively;" and the prayer of the plaintiff for injunctive relief was denied.

The plaintiff objected and excepted to each finding of fact, and each conclusion of law and to the judgment, and appealed.

*Covington & Lobdell for plaintiff, appellant.*

*John D. Shaw for appellee City of Charlotte.*

*Whitlock, Dockery, Ruff & Perry for appellees County of Mecklenburg and Commissioners of County of Mecklenburg.*

*H. I. McDougle for Public Library of Charlotte and Mecklenburg County, amicus curiae.*

PARKER, J.   It is passing strange that plaintiff's counsel "objects and excepts to each finding of fact embodied in the judgment," when each fact found by the Judge was either alleged in the Complaint, which they signed, and was admitted in the defendants' Answer, or copied verbatim from a stipulation and agreement of facts which they and the defendants' counsel signed.

No issues of fact are raised by the pleadings in this action.

As to the Judge's conclusions of law, the plaintiff's appeal entry is: "The plaintiff objects and excepts to each conclusion of law embodied in the judgment."   This is merely a broadside exception.   It does not comply with G.S.N.C. 1-186 and Rule 19 (3), Rules of Practice in the Supreme Court, 221 N.C. 544, pp. 554, 555, that the exceptions must be specific. *Arnold v. Trust Co.,* 218 N.C. 433, 11 S.E. 2d 307; *Roberts v. Davis,* 200 N.C. 424, 157 S.E. 66; *Rawls v. Lupton,* 193 N.C. 428, 137 S.E. 175.

The plaintiff objects and excepts to the signing and entry of the judgment.   "The assignment of error based on the exception to the signing of the judgment raises the solitary question whether the facts found by the Judge and the jury support the judgment."   *Bradham v. Robinson,* 236 N.C. 589, 73 S.E. 2d 555—a case where the parties agreed to the unique procedure that a jury should answer one issue of fact and the Judge should find the facts as to other issues of facts in the case.

Notwithstanding the form of the appeal entries we shall decide the questions raised by the pleadings and discussed in the briefs of the parties, as this is a case of great public interest to the residents of Charlotte and Mecklenburg County, and has been remanded once.   These questions are: *One,* was the submission to the voters in the City of Charlotte and the submission to the voters in the County of Mecklenburg outside of the City of the single question of issuing "City and County Library Bonds" a combination of two distinct and unrelated propositions in violation of Sec. 4 Art. V, as amended, and Sec. 7 Art. VII, as amended, of the State Constitution?   *Two,* will the issuance of $800,000.00 Library Bonds of

---

---

the County of Mecklenburg and of a similar amount of Library Bonds of the City of Charlotte result in a lack of uniformity of taxation as between the taxpayers in the County and the taxpayers in the City in violation of Sec. 3 Art. V of the State Constitution? *Three,* will the issuance of $800,000.00 Library Bonds of the County of Mecklenburg violate Sec. 3 Art. V, as amended, and Sec. 2 Art. VII of the State Constitution as not being for public purposes? *Four,* will the issuance of a similar amount of Library Bonds of the City of Charlotte violate Sec. 3 Art. V, as amended, of the State Constitution as not being for public purposes?

The plaintiff as a taxpayer in the City and County has the right to bring this action to test the authority of the City and County to issue the proposed bonds. *Wilson v. High Point,* 238 N.C. 14, 76 S.E. 2d 546.

Plaintiff's action to restrain the issuance of the bonds by the City and County upon the alleged ground that the issuance of the bonds would be in violation of the State Constitution is not barred because not brought within thirty days after the publication of the result of the election and the Notice to the Taxpayers and Citizens of the City and County. *Sessions v. Columbus County,* 214 N.C. 634, 200 S.E. 418.

As to the first question presented for decision. The Appellant contends that Ch. 1034, 1949 Session Laws of North Carolina, and the proceedings had by the City and County in pursuance thereof, violate Art. V Sec 4, as amended, and Art. VII Sec. 7, as amended, of the State Constitution, in that the Statute and the Proceedings had thereunder provided for the issuance of bonds for two distinct and unrelated purposes, to wit; public library buildings for the City and public library buildings for the County, and provided for submission to the voters residing in the City of these dual purposes in a single question, and did not permit the voters residing in the City to vote separately upon the question of issuing bonds of the City for library buildings for the City and upon the question of issuing bonds of the County for library buildings for the County.

Practically all the cases, expressly or by necessary implication, recognize the basic rule that a single proposition must be placed on the ballot for submission to the voters at a bond election for each distinct and independent object for which an indebtedness is contemplated; or to phrase it differently, several propositions cannot be submitted as a single question so as to have one expression of the voters answer all propositions. The submission of dual propositions as a single question could be used for log rolling purposes, and to defeat the right of the voters to express their choice. *Winston v. Bank,* 158 N.C. 512, 74 S.E. 611; *Hill v. Lenoir County,* 176 N.C. 572, 97 S.E. 498; *Lazenby v. Comrs. of Iredell,* 186 N.C. 548, 120 S.E. 214; Anno. 4 A.L.R. 2d 617, Secs. 3, 4 and 5 (an elaborate annotation where cases are cited from thirty-one states); 43 Am.

Jur., Public Securities and Obligations, Secs. 91 and 92; 64 C.J.S., Mun. Corp., Sec. 1925.   See also *Goforth v. Construction Co.*, 96 N.C. 535, 2 S.E. 361.

Did the question presented to the voters in this case contain separate and unrelated propositions, or was it the submission to the voters of a single proposition so related and united as to form in fact but a rounded whole?   If the question submitted contained separate and unrelated propositions, it deprived the voters of the right to express their choice on a single proposition and violated Art. V Sec 4, as amended, and Art. VII Sec. 7, as amended, of the North Carolina Constitution, for the proposed bonds concedingly not being for *a necessary expense* of the City and County, must be approved by a majority of those who voted in the election of 13 December 1952, and the voters must have had freedom of choice to vote separately upon each proposition submitted to tax themselves.   *Hill v. Lenoir County, supra.*   If the question presented to the voters was a single proposition so related and united as to form in fact but a rounded whole, it did not violate the above mentioned provisions of the State Constitution.   *Briggs v. Raleigh*, 166 N.C. 149, 81 S.E. 1084; *Hill v. Lenoir County, supra; Taylor v. Greensboro*, 175 N.C. 423, 95 S.E. 771; *Allen v. Reidsville*, 178 N.C. 513, 101 S.E. 267; *Riddle v. Cumberland*, 180 N.C. 321, 104 S.E. 662; *Lazenby v. Comrs. of Iredell, supra;* Anno. 4 A.L.R. 2d 617, Sec. 6; 43 Am. Jur., p. 345.

In *Briggs v. Raleigh, supra,* the question presented to the voters was the issuance of $100,000.00 of bonds of the city for extending a sewer line, for purchasing a site and building thereon a fire house and for permanent improvements.   This Court held the purposes of the various items are related to each other, and the bonds voted upon as a single proposition or upon a single ballot are valid.

In *Taylor v. Greensboro, supra,* these two propositions were voted on for or against on a single ballot, to wit; the creation of a board of education and an increase of the maximum tax rate for school purposes.   This Court said: "There was only one proposition submitted to the voters of Greensboro, and that was to amend the city charter in two particulars."

In *Allen v. Reidsville, supra,* it was held the sale of an electric light plant and the grant of a franchise to the purchaser, under which it could be operated, are so closely related as to justify submission to the voters as one proposition.

In *Lazenby v. Comrs. of Iredell, supra,* one ballot was used in submitting to the voters of the district the three propositions whether a special tax should be levied, whether the school should have additional grades, and whether the site should be changed.   This Court held the submission of these propositions on a single ballot did not invalidate the election because the order of election showed and the court found as a

fact that the levy of the special tax was the single question the voters had in mind.

In *Board of Education v. Woodworth,* 89 Okla. 192, 214 P. 1077, it was held that the submission of a proposed bond issue in the sum of $1,900,000.00 to the voters of Oklahoma City for the purpose of purchasing additional sites for school buildings and playgrounds, the erection of ward school buildings, a junior high school building and a senior high school building comprised a single proposition.

In *Kellams v. Compton,* Mo. Sup. (1947), 206 S.W. 2d 498, 4 A.L.R. 2d 612, there was submitted to the voters one question, whether a school district should issue bonds in an amount specified, for the purpose of constructing athletic field bleachers, a high school building, and an elementary school building. That Court said: "The notice follows, substantially, the language of the statute, and the projects were not so unrelated or incongruous as to constitute log rolling and a fraud upon the voters."

The form of the official ballot furnished to the voters in the election 13 December 1952 followed substantially the provisions of Ch. 1034, 1949 Session Laws of North Carolina. Unquestionably the words on the official ballot informed the voters inside the City and the voters inside the County outside of the City, with certainty and exactitude as to the proposition submitted, and how to cast an affirmative or negative vote. It seems clear from examining the official ballot that the voting for the issuance of City and County Bonds to erect and equip public library buildings for the City and County and to levy a tax for said bonds in the City for the bonds of the City, and a tax in the entire County, including the City, for the bonds of the County, was the single question which the voters had in mind at the election.

The purpose of the proposed issuance of bonds is to extend and enlarge the "Public Library of Charlotte and Mecklenburg County," which library is governed by a Board of Trustees consisting of representatives from Charlotte and the County, and is supported, according to the facts stipulated and found by the court, by county-wide taxation, an annual appropriation by the City and a percentage of the net profits from the A.B.C. Stores throughout the County, and which has its main library in Charlotte and branches in five towns of the County.

Under the facts presented to us, we are of opinion that the question presented to the voters was in fact a single proposition so related and united as to form a rounded whole, and did not violate the provisions of Art. V Sec. 4, as amended, and Art. VII Sec. 7, as amended, of the State Constitution.

Concerning the second question presented for decision the appellant contends that Ch. 1034, 1949 Session Laws of North Carolina, and the proceedings thereunder, violate this provision of Art. V Sec. 3, as

amended, of the State Constitution that "taxes on property shall be uniform as to each class of property taxed," in that the proposed issuance of bonds will place a greater burden of taxation on the taxpayers in Charlotte than on the taxpayers in the County outside of Charlotte.

Art. V Sec. 3 of our Constitution imperatively requires in express terms that all real and personal property be taxed by a uniform rule. *Guano Co. v. Biddle,* 158 N.C. 212, 73 S.E. 996. In this respect the Constitution "shows no favor and allows no discretion." *Wiley v. Comrs. of Salisbury,* 111 N.C. 397, 16 S.E. 542.

Uniformity in taxation on real and personal property is effected, when the tax is levied equally and uniformly on all property *in the same class. Wiley v. Comrs. of Salisbury, supra; Guano Co. v. Biddle, supra; R. R. v. Lacy,* 187 N.C. 615, 122 S.E. 763; *Roach v. Durham,* 204 N.C. 587, p. 591, 169 S.E. 149. The General Assembly of North Carolina has classified intangible personal property for taxation at a lower rate than tangible personal property or realty. G.S.N.C. 105-198 *et seq.*

In *Holton v. Comrs. of Mecklenburg County,* 93 N.C. 430, a statute authorized a tax for public roads to be imposed upon all the property in Mecklenburg County, and that no part of the tax be expended in the City of Charlotte for that purpose. The plaintiff, a taxpayer in Charlotte, contended the provision that no part of the tax should be expended in Charlotte was unequal and unjust. This Court said: "The Constitution does not prohibit such inequality. While it is very true that there must be equality and uniformity in imposing the burden of taxation upon property subject to it, so that each taxpayer shall pay the same proportionate tax on the same species of property taxed that every other taxpayer pays . . . this rule of equality does not apply to the distribution of the revenue arising from such taxation."

We have stated in *Martin County v. Trust Co.,* 178 N.C. 26, 100 S.E. 134, that the construction of roads and bridges is a matter of general public concern, and that "the Legislature may cast the expense of such public works upon the State at large, or upon territory specially and immediately benefited, even though the work may not be within a part of the total area attached." Among the cases cited is *Holton v. Comrs. of Mecklenburg County, supra.*

The appellant contends that residents of Charlotte will pay a tax to the City and then a tax to the County to support one institution, and that is in effect double taxation upon taxpayers in Charlotte.

To constitute double taxation both taxes must be imposed on the same property, for the same purpose, by the same state, federal or taxing authority, within the same jurisdiction, or taxing district, during the same taxing period and there must be the same character of tax. *Pure Oil Co. v. State,* 244 Ala. 258, 12 So. 2d 861, 148 A.L.R. 260; *Fox v.*

*Board for Louisville & Jefferson County Children's Home,* 244 Ky. 1, 50 S.W. 2d 67; *C. F. Smith Co. v. Fitzgerald,* 270 Mich. 659, 259 N.W. 352, appeal dismissed 296 U.S. 659, 80 L. Ed. 470; *Spencer v. Snedeker,* 361 Pa. 234, 64 A. 2d 771; 84 C.J.S., Taxation, Sec. 39; 51 Am. Jur., Taxation, Sec. 284; Cooley Taxation 4th Ed. Vol. One, Secs. 223 and 230. See also *S. v. Wheeler,* 141 N.C. 773, 53 S.E. 358, 5 L.R.A. (N.S.) 1139; ("Nor is there any constitutional prohibition against double taxation."); *Kenilworth v. Hyder,* 197 N.C. 85, 147 S.E. 736 ("furthermore, neither the State nor the Federal Constitution affords protection against double taxation by the State."); *Bottling Co. v. Shaw, Comr. of Revenue,* 232 N.C. 307, 59 S.E. 2d 819 ("double taxation, as such, is not prohibited by the Constitution, and is not invalid if the rule of uniformity is observed."); *Sabine v. Gill, Comr. of Revenue,* 229 N.C. 599, 51 S.E. 2d 1 (". . . double taxation, even within the State, is not *ipso facto* necessarily obnoxious to the Constitution when the intention to impose it is clear and it is free from discriminatory features, however odious to the taxpayer."). *Anderson v. Asheville,* 194 N.C. 117, 138 S.E. 715; *Banks v. Raleigh,* 220 N.C. 35, 16 S.E. 2d 413, relied upon by the appellant, are distinguishable.

The 14th Amendment to the U. S. Constitution does not prohibit a state from imposing double taxation. *Cream of Wheat Co. v. County of Grand Forks,* 253 U.S. 325, 64 L. Ed. 931; *Baker v. Druesedow,* 263 U.S. 137, 68 L. Ed. 212; *Swiss Oil Corp. v. Shanks,* 273 U.S. 407, 71 L. Ed. 709.

Absolute equality and uniformity in taxation are seldom, if ever, attainable. Such a conception has been characterized as "utopian" and "a baseless dream." The diversity of human judgment and the fallibility of all human beings preclude such a possibility. "The most that can be expected from wise legislation is an approximation to this desirable end; and the requirement of equality and uniformity found in the Constitutions of some states is complied with when designed and manifest departures from this rule are avoided." *Stanley v. Board of Supervisors of Albany County,* 121 U.S. 535, 30 L. Ed. 1000.

Ch. 1034, 1949 Session Laws of North Carolina, and the proceedings thereunder, do not violate Art. V Sec. 3 of the North Carolina Constitution, as contended by the plaintiff. There is no double taxation for one tax will be imposed by the City of Charlotte and another by the County of Mecklenburg, and further double taxation is neither prohibited by the State nor Federal Constitutions, though the courts do not look upon it with favor. *Sabine v. Gill, Comr. of Revenue, supra.*

We shall discuss together the third and fourth questions, which present for decision whether the proposed issuance of bonds of the City of Charlotte and of the County of Mecklenburg for "The Public Library of Charlotte and Mecklenburg County," and tax levies by the City and County to

pay their respective bonds, authorized by the election had by virtue of Ch. 1034, 1949 Session Laws of North Carolina, are for public purposes of the City and County within the purview of Art. V Sec. 3, as amended, and Art. VII Sec. 2 of the State Constitution. The answer without qualification is Yes.

Art. IX Sec. 1 of the North Carolina Constitution declares: "Religion, morality, and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged." Thomas Carlyle in "Heroes and Hero Worship, Lecture V, The Hero as Man of Letters" says: "The true University of these days is a collection of books."

G.S.N.C. 153-77 provides that the special approval of the General Assembly is hereby given to the issuance by counties of bonds for the purposes named in the section and to the levy of property taxes for the payment of the bonds; this includes purchase of necessary land, and in case of buildings the necessary equipment. The purpose named in subsec. (m) is the erection and purchase of library buildings and equipment.

G.S.N.C. 115-300 gives the State Board of Education authority to adopt such rules governing the establishment of public libraries receiving State aid as will best serve the educational interest of the people. G.S. N.C. 115-301 says the State Board of Education may use such portion of the State appropriation to rural libraries as it may deem necessary to aid the public schools in establishing local libraries as provided in this section.

The General Assembly at its 1953 Session rewrote Art. 8, Ch. 160 of the General Statutes relating to Public Libraries in Ch. 721, 1953 Session Laws. Prior to the 1953 Session of the General Assembly G.S.N.C. 160-77 provided that two or more counties or municipalities, or *a county or counties and a municipality or municipalities,* may join for the purpose of establishing and maintaining a free public library under the terms and provisions of Art. 8 Ch. 160 G.S. This provision was re-enacted in the 1953 Session of the Legislature in Sec. 160-75 with additional provisos as to the amount each participating unit shall contribute to the establishment and support of the joint library. Prior to 1953 the old statute, G.S. 160-75, and the 1953 statute, G.S. 160-74, gave counties and municipalities power to contract with existing libraries.

G.S.N.C. 153-9, subsec. 37, provides that the Boards of Commissioners of the counties in which there is a public city or town library, in order to help in extending the services of such libraries to rural communities of the county, can appropriate out of the funds under their control an amount sufficient to pay the expenses of such library extension service.

G.S.N.C. Ch. 125 concerns the State Library in Raleigh, North Carolina.

Ch. 1034, 1949 Session Laws, is not in conflict with the general State Law as to Public Libraries.

Art. V Sec. 3 of the State Constitution states: "Taxes shall be levied only for public purposes." We have stated many times what a public purpose is. A clear and succinct statement of a public purpose is in *Green v. Kitchin,* 229 N.C. 450, 50 S.E. 2d 545: "A tax or an appropriation is certainly for a public purpose if it is for the support of government, or for any of the recognized objects of government."

It seems to be the general rule that funds may be raised by taxation for the establishment and support of public libraries. 51 Am. Jur., Taxation, Sec. 356; 38 Am. Jur., Municipal Corporations, Sec. 562.

A public library is not a necessary public expense. *Westbrook v. Southern Pines,* 215 N.C. 20, 1 S.E. 2d 95; *Twining v. Wilmington,* 214 N.C. 655, 200 S.E. 416.

The people of this State speaking directly in their Constitution have said that religion, morality and knowledge being necessary to good government and the happiness of mankind the means of education shall be forever encouraged; and speaking indirectly through their representatives in their General Assembly have repeatedly enacted laws to promote the establishment and maintenance of public libraries by counties and municipalities. They are convinced that "a good book is the precious life-blood of a master spirit, embalmed and treasured up on purpose to a life beyond life" (Milton "Areopagitica"), and such a book says to every man "I will go with thee, and be thy guide in thy most need, to go by thy side." The levying of taxes for public libraries by the State, counties and municipal corporations is for "a public purpose" under Art. V Sec. 3, as amended, of our Constitution, and the people have said so in emphatic tones. Neither does it conflict with Art. VII Sec. 2 of the Constitution, as contended by appellant.

By virtue of Ch. 1034, 1949 Session Laws of North Carolina, the people of Charlotte who will be liable for the City Bonds, and necessarily affected by the tax to pay them voted for the issuance of these bonds, sanctioning and approving by a majority vote the action of the Legislature. Under our government ultimate sovereignty is vested in the people, and they alone can say how they shall be governed. The people of Charlotte by their vote have said an increase in the public library facilities of their City and County Library will spread the means of education and thereby promote good government in their city and county, which will be to the distinct benefit of the City of Charlotte which pays the greater part of the taxes in Mecklenburg County, and the fact that some of the money from the City Bonds will, or may be, spent outside of the City does not prevent the City Bonds being issued for a public purpose of the City under the facts presented to us. *Briggs v. Raleigh,* 195 N.C. 223, 141

S.E. 597; *Turner v. Reidsville,* 224 N.C. 42, 29 S.E. 2d 211. The case of *Wilson v. High Point, supra,* is clearly distinguishable.

Sir William Osler in "A Way of Life": An Address delivered to Yale students on the evening of Sunday, April 20, 1913: used words which could well be inscribed on the wall of public libraries. "As the soul is dyed by the thoughts, let no day pass without contact with the best literature of the world. Learn to know your Bible, though not perhaps as your fathers did. In forming character and in shaping conduct, its touch has still its ancient power. Of the kindred of Ram and sons of Elihu, you should know its beauties and its strength. Fifteen or twenty minutes day by day will give you fellowship with the great minds of the race, and little by little as the years pass you extend your friendship with the immortal dead. They will give you faith in your own day." Man is always changing, but the elemental passions of the human heart remain as at creation's dawn. The great ideas of the classic writers come ringing down the centuries vibrant and alive, inspiring and influencing our thoughts as effectually as in the days when Homer throughout the Greek world sang the wrath of Achilles.

". . . In furtherance of a general public policy, it has been held that courts must, as a rule, wherever possible, uphold the validity of municipal bond elections, unless clear grounds for invalidating them are shown." 43 Am. Jur., Public Securities and Obligations, Sec. 78.

Ch. 1034, 1949 Session Laws of North Carolina, is constitutional and the proposed bonds, when issued, will be valid obligations of the City of Charlotte and the County of Mecklenburg.

The judgment of the lower court is
Affirmed.